*467 OPINION OF THE COURT
Arthur W. Lonschein, J.
In this action, United States Aviation Underwriters, Inc., a liability insurer which participated in the settlement of an action against two of its insureds, sues one of them, the General Electric Company, for repayment of a deductible, as provided by the contract of insurance, and moves for summary judgment. In addition to alleging the existence of factual issues, the insured raises certain legal defenses involving the insurer’s conflict of interest in insuring two antagonistic defendants. Surprisingly, these defenses have not been the subject of reported decisions in this State.
This action is the aftermath of a lengthy and complicated litigation involving an airline accident. On November 12, 1975, a DC-10 airliner operated by Overseas National Airways, Inc. (ONA) was destroyed by fire as a result of an accident during an attempted takeoff. In the investigations which followed, both the engines, manufactured by the General Electric Company (the present defendant), and the tires and landing gear, manufactured by Goodyear Tire & Rubber Co. and Goodyear Aerospace Corp. (together referred to as Goodyear), were implicated as possible causes of the accident.
It quickly became apparent that the situation would be complicated by the fact that each insurance company involved covered parties with conflicting interests. It was, perhaps, inevitable that this should be so, since there are only three major providers of liability insurance in the aviation field: the United States Aircraft Insurance Group, represented in this action by its "aviation managers”, the plaintiff United States Aviation Underwriters (USAU), Associated Aviation Underwriters (AAU) and certain underwriters associated with Lloyd’s, London and other London insurers (the London Underwriters). Furthermore, due to the large sums at risk in aviation accidents, it is a frequent practice for these insurers to share in covering these risks. Thus, AAU and certain of the London Underwriters insured ONA for loss to the aircraft itself, known as "hull” insurance after the industry’s origins in marine insurance. Goodyear was insured by USAU. GE was insured by all three carriers.
Since it is the structure of GE’s insurance which engendered this action, it must be set out in detail. Its policies with USAU, AAU and the London Underwriters together provided coverage for losses of up to $25 million. The first $5 million of *468 this, however, was a "deductible”, for which GE was to retain liability. Thus, the three insurers together could be liable for $20 million. AAU carried 50% of this risk, USAU 35%, and the London Underwriters 15%. The contracts were apparently identical except for the clauses providing for the apportionment of coverage. Each of them provided that the insurer was to defend GE in the event of a suit against it. More importantly, the contracts each provided that the insurer could settle any suit against GE for any amount within the policy limits, including part or all of the deductible, in the insurer’s discretion and without the consent of GE, and that GE would thereupon be required to repay the deductible.
Totally absent from these contracts was any provision for resolution of disagreements between the insurers, or management of a situation in which one or more of them also insured a party adverse to GE. This latter omission is especially noteworthy, since the combination of all three major insurers to cover the GE risk made it nearly certain that in any significant loss, at least one of GE’s insurers would cover a party whose interests were adverse to GE, and thus be faced with a conflict as to its loyalties. Each of these contracts described the insurance afforded by it as "primary insurance.”
Eventually, the accident resulted in litigation, and the conflicts of interest facing each insurer became manifest. AAU and the London Underwriters, having paid ONA on the hull policy, had subrogated and were now suing their insured GE, as well as Goodyear and other defendants. GE, insured in part by USAU and Goodyear, wholly insured by USAU, cross-claimed against each other.
Under these circumstances, neither USAU, AAU nor the London Underwriters could properly provide a defense for GE, which retained independent counsel. USAU did retain its house counsel to represent Goodyear, although the same considerations which prevented it from defending GE and thereby cross-claiming against Goodyear would seem to have operated with equal force to have prevented it from directly defending Goodyear and thereby cross-claiming against GE. Thus, in the ONA action, GE found all three of its major insurers arrayed against it.
During the trial, extensive settlement discussions were had under the supervision of the court. GE’s position, repeatedly expressed during these discussions, was that it was willing to contribute the sum of $4,999,999 towards a settlement: that is, *469 the entire $5 million deductible, less $1. The parties were unable to arrive at a settlement involving this contribution from GE.
The amount of the offer is noteworthy in that it was an expression of a position which GE maintains in this action. It was the belief of GE and its counsel that so long as they failed to offer the entire $5 million deductible, they retained control over settlement negotiations, to the exclusion of USAU, AAU and the London Underwriters. It was apparently GE’s concern to preclude its insurers from paying on its account, lest they increase its premiums in the future. No reason is apparent, and no authority has been cited, which would support the proposition that the amount of a settlement offer, rather than the actual exposure to risk, should determine the rights of insurers to control the settlement of an action. Nevertheless, that was the position taken by GE and its counsel.
All of this reached a climax on May 5, 1983. At that time, the plaintiff’s case was nearly complete. Counsel for the insurers appeared before the court, and announced that GE’s insurers (meaning USAU, AAU, and the London Underwriters) had reached agreement with the other defendants and the ONA plaintiff (that is, AAU, and the London Underwriters as subrogees) on the terms of a settlement. They were to pay $13.5 million in total, of which $8 million was allocated as GE’s contribution. Goodyear’s contribution was $500,000, with the rest coming from the other defendants. It was made plain at that time that the settling insurers intended to look to GE for repayment of the $5 million deductible under the terms of the contract.
GE’s independent counsel vehemently objected to this settlement. He expressed his opinion that the ONA plaintiff had failed to make out a prima facie case against GE, and further that when the plaintiff rested, his motion for dismissal would have had to have been granted.
Further, he disputed the authority of counsel for the insurers to appear and supersede him, against GE’s express wishes and most definitely without its consent, and agree to a settlement in GE’s name. Finally, he made clear his position that in doing so, the insurers were acting outside the scope of their contractual authority, were acting as volunteers, and could not expect to look to GE for repayment of any portion of the settlement costs.
The court approved the settlement, since the insurers and *470 the other defendants were willing to pay, and the plaintiffs were willing to accept the $13.5 million in satisfaction of all claims. It expressly declined to rule on the question of whether the insurers could look to GE for repayment of the deductible, and that issue was left for a separate action. GE refused to pay any portion of the deductible to any of its insurers. These actions followed.
Action No. 2, United States Aviation Underwriters v General Elec. Co., was commenced first. In it, USAU and AAU sue GE for payment of the deductible, in the first and third causes of action; for the repayment of all moneys paid on its behalf, in the second and fourth causes of action; and for legal expenses in the fifth cause of action. In action No. 1, the London Underwriters sued for the same relief. In both actions, GE counterclaimed against all of its insurers, and pleaded affirmative defenses. The counterclaims were for compensatory and punitive damages due to the alleged conflicts of interest of each of the insurers in the ONA action and their lack of good faith in settling that action without GE’s consent and in a fashion detrimental to its interests. The actions were consolidated.
Subsequently, GE reached a settlement with AAU and the London Underwriters, and all of the issues relating to these insurers’ conflict of interest in suing their insured have been eliminated from the action. All that remains are the claims and counterclaims between GE and USAU.
As between USAU and GE, the factual situation may be simply stated: USAU insured two major defendants in the ONA action, GE and Goodyear, although it retained counsel only for Goodyear. GE obtained its own counsel. USAU then participated in settling the ONA action on behalf of both GE and Goodyear, over the protests of GE and its counsel.
While the complaint alleges five causes of action, USAU moves for summary judgment on only the first, seeking the return of USAU’s 35% share of the $5 million deductible, or $1,750,000.
It makes a very simple showing in support of this motion, pointing to the contract of insurance which, on its face, provides that USAU is to control all settlements in its sole discretion and for the repayment of the deductible, the fact of the settlement and payment for an amount in excess of the deductible and within the policy limits, and GE’s nonpayment of the deductible after demand.
*471 In opposition, and in support of its cross motion for dismissal of the complaint and for other relief, GE raises a number of issues.
GE’s first claim is that the contract is, in fact, not clear that USAU’s right to control settlement extended to the deductible.
GE points to the clause in the contract entitled "defense, settlement, supplementary payments”. This reads, in relevant part, as follows:
"With respect to the insurance afforded by other terms of this policy, the company shall:
"a) defend any suit against the insured * * * the company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient.”
GE claims that it is unclear whether the words "the insurance afforded by other terms of this policy” refer to the entire $25 million policy limits or only the $20 million for which the insurers could be liable. If the latter, it is GE’s contention that the insurers have no right to make any offer which includes the $5 million deductible without GE’s consent.
That this argument is specious can be readily seen by reference to a later paragraph of the contract, governing the insured’s retained liability (in other words, the deductible) which reads as follows:
"2. INSUREDS CONTRIBUTION * * *
"(a) (2) * * * The company may * * * pay any part or all of 'deductible’ to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company therefor.”
In the same section, the policy continues: "(c) The Terms of this policy, including those with respect to * * * the company’s right to investigate, negotiate, or settle any claim or suit, apply irrespective of the application of 'the deductible’ or of the insureds contribution.”
Reading the contract as the whole, therefore, it is clear that the insurers have the right under the contract to settle an action with or without GE’s consent, and that this authority extends to all or any part of the deductible.
Under the terms of this contract, it is perfectly proper for the insurers to settle an action for a figure where GE’s contribution in the form of the deductible is considerably larger than the insurer’s contribution. That is in fact what happened here. It would even be proper for the insurers to *472 settle for a figure within the deductible, thus spending GE’s money without its consent and at no cost to themselves. While either of these results might seem to be burdensome to GE, particularly the latter, that is the contract which GE made with its insurers. There is no claim made by GE that it was not in an equal bargaining position, or that it was in some manner prevented from protecting itself in framing the terms of the contract.
The court, therefore, concludes that the provisions of the contract which place total control over settlement in the hands of USAU, AAU and the London Underwriters are unambiguous and, on their face, enforceable.
Next, GE attempts to avoid the effect of the contract by pointing to USAU’s conflict of interest. It is argued that, as a result of this conflict, and as a matter of law, USAU lost its right to impose a settlement upon GE. USAU had a conflict of interest as noted in that it insured two defendants whose positions were antagonistic, GE and Goodyear. Since it seems that Goodyear’s policy was not subject to a deductible, it would have been in USAU’s interest to see that GE was either held to be solely liable or to have a substantial percentage of liability apportioned to it. Further, and even in the absence of a disparity in amounts of their deductibles, USAU could not have participated actively in the defense of both antagonistic defendants. (Rimar v Continental Cas. Co., 50 AD2d 169.)
Recognizing the unavoidability of this conflict, USAU did not participate in the preparation or presentation of GE’s defense of the ONA action. GE, in its papers before the court, takes great umbrage at the fact that USAU failed to defend it and further that it failed to pay for the counsel which GE obtained. Since it appears, however, that this counsel was obtained by Electric Mutual Liability Insurance Company (EMLICO), and that GE was not forced to bear the cost of its defense, the court fails to see why the provenance of GE’s defense should be regarded as controlling or even particularly significant.
GE takes even greater umbrage at the fact that after allowing GE to fend for itself, USAU provided its other insured, Goodyear, with a defense from USAU’s in-house counsel. GE seems to view this as a betrayal, and appears greatly offended that USAU should seemingly prefer Goodyear to it in this manner. While it would, perhaps, have been preferable for USAU to dissociate itself from both defenses, *473 the court can see no reason why USAU’s involvement with Goodyear’s defense should affect its contractual right to control settlement on GE’s behalf. If GE had been aggrieved by the selection of Goodyear’s counsel, its remedy would seem to have been a motion in the ONA action to disqualify the opposing attorneys. No such motion was made.
GE’s argument continues with the same proposition advanced by its counsel in objecting to the settlement of the ONA action, that since GE was already represented by independent counsel, the counsel retained by the insurers to enter into the settlement had no standing to speak for or bind GE in any way. This, of course, is tantamount to the proposition that the insurers had lost their right to offer GE’s deductible as part of a settlement.
A contract of insurance places upon an insurer the duties of defending and indemnifying its insured. Each of these duties carries with it a corresponding right. Along with the duty to indemnify comes the right to settle on behalf of the insured and, as a general rule, the insurer has the right to settle with or without the insured’s consent. Along with the duty to defend comes the right to control the defense, although as noted above this right can be lost where the insurer is subject to a conflict of interest or to divided loyalties.
In the general run of cases, the right of control over the defense and the right to control settlement negotiations go hand in hand. It is the essence of GE’s position that the right to control the defense necessarily carries with it the right to control offers of settlement, and that when USAU relinquished its right to control GE’s defense due to the conflict with Goodyear, it also relinquished its right to control settlement offers and a fortiori its right to impose upon GE a settlement including the deductible. USAU, of course, takes the contrary view.
Neither party offers statutory or case authority, in this jurisdiction or elsewhere, which directly addresses the question. While GE cites a long line of cases (such as Rimar v Continental Cas. Co., 50 AD2d 169, supra) to support its proposition that an insurer which finds itself in a conflict of interest with its insured can control neither the defense nor the settlement of the action, its reading of the cases is erroneous. While they do stand for the principle that the insurer must yield control of the defense to independent counsel, none of them even discusses control over settlements.
*474 The duties to defend and to indemnify are separate and distinct (Prashker v United States Guar. Co., 1 NY2d 584; Freedman v Glens Falls Ins. Co., 27 NY2d 364) and the court sees no reason why the corresponding rights of control over the defense and over settlement must be viewed as inseparable. In the normal case, of course, the company directly provides a defense to its insured, and offers of settlement are made through counsel retained by the company. Where, however, for some reason, the company does not actively participate in the defense, the company cannot make its offers of settlement through independent counsel. If it is to be foreclosed from making offers of settlement on its own behalf, then it is put at risk for whatever the verdict may eventually be and has lost the vital option of making the prudent business decision which a fair settlement might represent.
An example drawn from a more mundane species of litigation will illustrate the point. If, in an automobile accident action, two defendants each allege liability against the other, and both are insured by the same carrier, that one carrier could not itself defend both defendants. Independent counsel would have to be retained for at least one of them. Can it seriously be doubted that the carrier would have the right to bypass the independent counsel and settle the litigation as against both defendants, at any stage and on any terms, within the policy limits, which it deemed expedient? The court sees no difference in principle between the conflict involved in the automobile action just described and the conflict involved in this case.
The court concludes that an insurer, who has not participated in the defense of an insured due to a conflict of interest, is not barred by that fact alone from settling the action against its insured without the insured’s consent, and thereby obliging the insured to repay a deductible.
Having thus concluded that the legal issues raised by GE are insufficient to defeat USAU’s first cause of action, the court now turns to the factual issues it alleges.
The most serious of these factual issues is the question of USAU’s good faith. GE argues that the ONA action was settled just as it was about to win, so that the insurers, including USAU, would not lose the benefit of the deductible. The plaintiff was about to rest, and GE’s counsel was confident that a prima facie case had not been made out against it.
In support of this argument, GE has supplied the court with *475 the entire record of the ONA case, as well as a presentation of the evidence it would have introduced had the ONA action continued. GE asks the court, in other words, to retry the ONA case. The court declines the invitation. A determination of good faith cannot be made to turn on an unavoidably speculative prognostication of the outcome of an unfinished trial.
Rather, the inquiry must be akin to that undertaken in a case where an insurer is sued for a bad-faith refusal to settle. In such a case the insured must make "an extraordinary showing of a disingenuous or dishonest failure to carry out a contract.” (Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, 437.) Such bad faith cannot exist where the insurer takes a position which is arguably correct at the time, even if ultimately shown to be incorrect (Sukup v State of New York, 19 NY2d 519, 522; Dawn Frosted Meats v Insurance Co. of N. Am., 99 AD2d 448 [1st Dept 1984]).
Similarly, here, USAU cannot be charged with bad faith if the settlement was arguably prudent in light of the posture of the ONA case. In this connection, GE’s insistence that a crucial element was missing from the ONA plaintiffs proof is immaterial. It is an unfortunate but unavoidable fact of life in the courts that the cases are sometimes decided wrongly, by both Judges and juries. A prudent insurer will sometimes settle a case it believes to be nonmeritorious, in order to avoid the possibility of greater exposure to loss. In order to raise a factual issue as to USAU’s bad faith, GE would have to make a showing, not merely that its view of the case was right and USAU’s was wrong, but that no reasonable observer could have viewed the situation as USAU did. GE has not made such a showing.
Indeed, GE’s own settlement offer is strong evidence that it was at least arguably at risk in the ONA action. The settlement offer was certainly not an admission of liability, but the fact that it was made, and the fact that the offer was as high as it was, shows clearly that GE itself recognized that a verdict against it was a significant possibility. This is so even if the offer was withdrawn during trial, as GE contends. Since GE offered essentially (if not exactly) all of the $5 million deductible, it cannot be said that the eventual settlement figure of $8 million was wholly unreasonable.
Therefore, the court concludes that GE has failed to make a sufficient factual showing to raise a triable issue of fact as to USAU’s bad faith in participating in the settlement.
*476 GE did indeed have the option, if it truly believed that it was going to succeed in the ON A action, of continuing its defense to the bitter end. In order to do so, however, it would have had to assume all of the risks attendant in such a position. It would have had to withdraw its demand on its insurers to indemnify it in the event of a plaintiff’s verdict. GE could not have it both ways. It had bargained away the right to control settlement offers in return for protection from large verdicts. It could not insist on exercising that control to the exclusion of its insurers, and at the same time look to them for indemnification if it turned out to be wrong.
The motion by USAU for partial summary judgment on its first cause of action is granted. That branch of the cross motion seeking dismissal of the first cause of action is denied. That branch of the cross motion seeking a severance of action No. 1 is granted to the extent that all claims and counterclaims between GE, AAU and the London Underwriters are severed, and the claims and counterclaims between GE and USAU are continued, and the caption shall be amended accordingly. Those branches of the cross motion seeking to strike certain matters from the record are denied.