AMERICAN HOME ASSURANCE COMPANY, INC., PLAINTIFF–
RESPONDENT, v. HERMANN'S WAREHOUSE
CORPORATION, DEFENDANT–APPELLANT.

Argued October 11, 1988—Decided September 18, 1989.

*William J. Shipers* argued the cause for appellant (*Thomas J. Shamy*, attorney).

*Daniel C. Nowell* argued the cause for respondent (*Garrity, Fitzpatrick, Graham, Hawkins & Favetta*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

Plaintiff, American Home Assurance Company, Inc. (American), furnished general comprehensive liability coverage to the defendant, Hermann's Warehouse Corporation, a warehouse company, under a "Warehouseman or Bailee Liability" Form (Merchandise) policy. The contract contained two deductible provisions. In addition, and significantly for this case, the policy reserved to the insurer the exclusive right to settle any claim or suit brought against the insured. The carrier settled a third party's suit against Hermann's for a figure substantially in excess of the limit of the applicable deductible but well within the policy limits. Thereafter it sought reimbursement from the insured for the amount of the deductible. When the insured refused to pay, this suit ensued. On cross-motions for summary judgment the trial court held for defendant, reasoning that because the insured did not approve the settlement, it should not be required to pay the deductible. The Appellate Division reversed and remanded to the trial court to determine which of the two deductible provisions was applicable. After completion of the trial court proceedings fixing the amount of the deductible, we granted certification, 110 *N.J.* 164 (1988). We now affirm.

I

The basic facts are that on August 4, 1980, All Freight Trucking Company notified Hermann's Warehouse Corporation

of its intention to make a delivery of several container trailers to Hermann's facility on Jersey Avenue, New Brunswick. The trailers belonged to Kurt Adler, Inc., and contained Christmas ornaments that were to be stored by Hermann's. All Freight was informed by Hermann's that if the trailers were delivered on August Fourth, they could not be unloaded promptly due to Hermann's heavy work schedule.

All Freight acknowledged the possible delay, but nonetheless chose to deliver three trailers to Hermann's on August Fourth for unloading by defendant the following morning. According to Hermann's the contents of the trailers were not formally acknowledged, no receipt was issued, and no storage fee was charged. Rather, the trailers were left with Hermann's solely for All Freight's convenience.

When a Hermann's employee discovered the next morning that two of the three trailers had disappeared, he promptly notified the F.B.I. and New Brunswick police. Thereafter, one of the missing trailers was found empty in a parking lot in Carteret. The second trailer was found within a quarter of a mile of the first, with most of its contents gone. Much of the missing merchandise was later found in a discount store in Brooklyn. The goods were subsequently returned to Hermann's for storage.

Adler sued Hermann's to recover for the lost merchandise, claiming $76,382.80 in damages plus interest of about $34,000. Defendant sent the suit papers to its insurance carrier, American, for defense. Over defendant's objections, American negotiated a settlement with Adler for $67,500. Thereafter American requested reimbursement of the deductible. When Hermann's refused payment, American instituted this suit. As we have indicated, the trial court entered summary judgment for defendant and the Appellate Division reversed, in an opinion reported at 215 *N.J.Super.* 260 (1987).

The policy, with liability limits of $2,000,000, contains the customary provisions requiring the insurer to defend any suits

brought against Hermann's to enforce claims within the policy coverage, "even if such suits are groundless, false or fraudulent." As with many commercial policies, there is a "deductible" of $20,000 (the figure determined on the remand and not disputed on this appeal). The policy provides that "[f]rom the total claims arising out of any one occurrence, the sum [of $20,000] shall be deducted and this Company shall * * * be liable for [only] the excess of this amount. * * * If the Company shall have paid such deductible amount, the Assured shall promptly reimburse the Company therefor." Finally, the insurance contract imposes on the insured the usual obligation to cooperate "in facilitating the investigation and disposition of claims and suits" and to "assist in effecting settlement * * *." Then follows the provision at issue in this case, again a standard one in policies of this type: *The Company reserves the right to settle any claim, suit or other proceedings as it may deem expedient.* (Emphasis added.)

The insured argued below, as it does here, that American is not entitled to recover the deductible without having first secured the insured's consent to the settlement. Hermann's further contends that the carrier breached its duty, as set forth in the policy, to provide an adequate defense. Finally, the insured asserts that plaintiff failed to act in good faith, as required by our case law. More specifically, Hermann's says that although American settled Adler's claim within the policy limits, the carrier nevertheless breached its duty of good faith and its contractual obligation to defend its insured by failing actively to resist a case that Hermann's fervently believed it could win on the merits. Plaintiff counters by pointing to the policy language quoted above, which, according to the carrier, gives it the "absolute right" to settle claims without the insured's consent.

In ruling in favor of plaintiff the Appellate Division concluded that there was "no doubt" that the policy gave the insurer the power to settle the underlying claim of Adler. 215 *N.J.Super.* at 264. The court pointed out that although some insur-

ance policies permit the carrier to settle only with the consent of the insured (many medical-malpractice policies so provide), the policy in this case contains no such provision; therefore, "absent some overriding principle of law, plaintiff should have been granted summary judgment." *Ibid.*

Addressing Hermann's contentions that such an "overriding principle" may be found in decisions that impose on an insurance carrier the duty to act in good faith towards its insured in settlement of claims, and that American had breached that duty, the Appellate Division observed that although an insurer "must act in good faith in settling claims," *id.* at 265, that duty developed in the context of a carrier's refusal to settle within the policy limits, thereby exposing the insured to an excess verdict. *Ibid.* The court noted that no New Jersey case has found bad faith in a carrier's "settling a claim within the policy limits when its power to do so is not conditioned upon obtaining the consent of the insured." *Ibid.* Therefore, the court held that American, having settled the case within Hermann's policy limits, was entitled to reimbursement for the amount of the deductible. *Ibid.*

In support of its holding the Appellate Division alluded to the mischief that a contrary ruling would create in tending to frustrate settlements, to which the law gives "a high priority," *ibid.*, and the absence here of the reason for imposition of a duty of good faith, namely, the protection against a carrier putting the insured's personal assets at peril. *Id.* at 266. As well, the court below was influenced by the fact that a commercial insured is able to negotiate for the inclusion in its insurance policy of a provision reserving unto the insured a right to approve any settlement, *ibid.*, and by the fact that had the insured wished, it could have waived its insurance protection and defended the Adler suit itself. *Ibid.* Finally, the Appellate Division cited New Jersey and other case law to reinforce its determination that American was entitled to recover from its insured the amount of the deductible: see *Casualty Insurance Co. v. Town & Country Pre-School Nursery, Inc.*, 147 *Ill.*

*App.*3d 567, 101 *Ill.Dec.* 669, 498 *N.E.*2d 1177 (1986) (carrier entitled to reimbursement from insured when carrier settled case not only within policy limits but within deductible; good faith "not a material factual issue" given policy language permitting insurer to settle claims "as it deems expedient" and requiring insured to reimburse insurer "for such part of the deductible amount as has been paid by the company"); *Travelers Insurance Co. v. Hitchner,* 61 *N.J.Super.* 283 (Law Div. 1960) (insurer entitled to reimbursement from insured of deductible expended in settling claim; policy gave carrier right to settle claims as it "deem[ed] expedient"); *Orion Insurance Co., Ltd. v. General Electric Co.,* 129 *Misc.*2d 466, 493 *N.Y. S.*2d 397 (Sup.Ct.1985) (enforcing insurance policy's "unambiguous" provision placing total control of settlement in hands of insurer), *aff'd o.b. sub nom. United States Aviation Underwriters, Inc. v. General Electric Co.,* 125 *A.D.*2d 567, 509 *N.Y.S.*2d 778 (1986); *Marginian v. Allstate Insurance Co.,* 18 *Ohio St.*3d 345, 481 *N.E.*2d 600 (1985) (no "good faith" issue when insurer settles case within policy limits, despite insured's objections, given policy language empowering insurer to settle claims as it feels "appropriate").

## II

Agreeing generally with the approach of the Appellate Division, we are content to affirm substantially on the basis of that court's opinion, subject however to clarification of some of its language that might otherwise be susceptible of misinterpretation. Particularly are we concerned that one might read the opinion below to suggest that an insurer has no duty to act with good faith when it settles a claim against its insured for an amount within the policy limits, given the statement that "an insurance company may not be held liable or be held to lose its right to recover a deductible on a claim of bad faith to its insured when it settles a case within the policy limits." 215 *N.J.Super.* at 265.

Although it is true, as the Appellate Division observed, 215 *N.J.Super.* at 265, that the case law defining an insurance company's duty to act in good faith in settling claims has developed in the context of cases in which the carrier's refusal to settle for a figure within the policy limits exposes the insured to an excess verdict, *see, e.g., Board of Educ. of Chatham v. Lumbermens Mut. Casualty Co.,* 293 *F.Supp.* 541 (D.N.J.1968), aff'd, 419 *F.*2d 837 (3rd Cir.1969); *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford,* 72 *N.J.* 63 (1976); *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474 (1974); *Bowers v. Camden Fire Ins. Ass'n,* 51 *N.J.* 62 (1968); *Radio Taxi Serv., Inc. v. Lincoln Mutual Ins. Co.,* 31 *N.J.* 299 (1960), the good-faith obligation is not limited to that circumstance exclusively. The nature of the relationship is such as to require an insurer to exercise good faith in its dealings with the insured, particularly when the insured's money or other interests—for instance, reputation—may be at risk. *See Lieberman v. Employers Ins. of Wausau,* 84 *N.J.* 325 (1980) ("the relationship of the [insurance] company to its insured regarding settlement is one of inherent fiduciary obligation." *Id.* at 336 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of America, supra,* 65 *N.J.* at 492)).

As this Court said over twenty years ago, "Good faith is a broad concept. Whether it was adhered to by the carrier must depend upon the circumstances of the particular case." *Bowers v. Camden Fire Ins. Ass'n, supra,* 51 *N.J.* at 71. The boundaries of "good faith" will become compressed in favor of the insured depending on those circumstances. *Ibid.* The "circumstances" to which the *Bowers* court adverted were those in which the insurer recognizes the probability that an adverse verdict at the trial will exceed the policy limits. The Court pointed out that the potential exposure to a judgment for which the insured is only partly protected "makes it obvious that ordinarily the interests of the insurer and the insured come into conflict whenever a settlement demand is presented which is within the limit of the coverage." *Ibid.* When that occurs, the

carrier's duty of good faith demands that "the insurer treat[ ] any settlement as if it had full coverage for whatever verdict might be recovered, regardless of policy limits, and make[ ] its decision to settle or go to trial on that basis." 51 *N.J.* at 71–72.

The difference between the exposure-to-excess-verdict and the settlement-including-deductible situations as it may affect a carrier's discharge of its good-faith duty to its insured is obvious. In the former, the insured's funds are put in jeopardy when, in the face of the probability of an adverse verdict in excess of the policy limits, the carrier rejects a claimant's demand to settle for a figure within the limits of liability coverage. As we have seen, *Bowers, supra,* instructs us that resolution of those conflicting interests requires that the insurer approach settlement as if there were sufficient coverage to satisfy the potential verdict—in other words, as if its own funds were at risk. 51 *N.J.* at 71–72. In the context of this case, however, where the insured has contracted away the right to control settlement and has agreed, through a "deductible" clause, that the carrier's funds are not at risk until the deductible amount has been exhausted, there may be a conflict in the sense that the insured's money may be paid without the insured's knowledge, approval, or permission. But that is exactly what the contract calls for. *See Orion Ins. Co., Ltd. v. General Elec. Co., supra,* in which the court, confronted with policy provisions much like those in this case and a settlement by the insurer within the deductible alone, said that

[i]t would * * * be proper for the insurers to settle for a figure within the deductible, thus spending [the insured's] money without its consent and at no cost to themselves. While either of these results might seem to be burdensome to [the insured], particularly the latter, that is the contract which [the insured] made with its insurer. There is no claim made by [the insured] that it was not in an equal bargaining position, or that it was in some manner prevented from protecting itself in framing the terms of the contract.

[129 *Misc.*2d at 471, 493 *N.Y.S.*2d at 401.]

*See also Casualty Ins. Co. v. Town & Country Pre–School Nursery, Inc., supra* 147 *Ill.App.*3d 567, 101 *Ill.Dec.* 669, 498 *N.E.*2d 1177 (policy provided $1,000,000 coverage per occur-

rence with $2000 deductible per claim; insurer's settlement with injured claimant for $1800 did not present a "material factual issue" such as would defeat its right to reimbursement of the deductible amount from insured); *Feliberty v. Damon*, 129 *A.D.*2d 207, 517 *N.Y.S.*2d 632 (1987) ("duty of good faith [not] a material factual issue," (citing *Town & Country*)). Whether we would embrace in full the holdings of the *Orion* and *Town & Country* opinions need not be decided today and we imply no view on those holdings.

In a sense, whenever a liability policy contains a deductible clause, there is always a conflict. It is built into the arrangement—an arrangement the contours of which surely are negotiable in the commercial setting. There is nothing before us to suggest that Hermann's was foreclosed from obtaining coverage that would have included no deductible amount or coverage that would have given it the right to approve any settlement. Had it wished one or both of those forms of protection, it would have had to pay for such additional consideration. But if, as here, the deductible provision is accompanied by another provision giving the carrier the unfettered right to settle as it "deems expedient," the insured has bargained away whatever rights might otherwise be created by what might be perceived as a conflict between insurer and insured.

In this case it is sufficient to hold that whatever may be the outer limits of "good faith" in the context of an insurer settling a third-party claim with funds that include the insured's deductible, this plaintiff's claim for reimbursement of the deductible cannot be defeated on the ground that the settlement in the face of the insured's objection manifested bad faith. The circumstances demonstrate the unmistakable exclusive power of the insurer to control settlement, the equally clear obligation of the insured to reimburse the carrier for any of the deductible expended in settlement, and the fact that the insurer paid with its own money about 235% more of the settlement amount than was represented by the insured's deductible.

That is not to say that the normal good-faith duty of the carrier is obliterated by such circumstances. A settlement of the type at issue here is not "absolutely immune to attack as a product of bad faith." *Gardner v. Aetna Casualty & Surety Co.*, 841 *F.*2d 82 (4th Cir.1988). The point to be made is that although the insurer has the exclusive right to control settlement, "[t]hat right imposes a corresponding duty raised by law to observe ordinary diligence in performing that power when in the exercise of it." *Mitchum v. Hudgens*, 533 *So.*2d 194, 197 (1988) (quoting *Waters v. American Casualty Co.*, 261 *Ala.* 252, 260–61, 73 *So.*2d 524, 531 (1953)).

Defendant points to certain steps the carrier should have taken to improve Hermann's defensive position in respect of the Adler claim, particularly the impleading of All Freight. Plaintiff responds by emphasizing a weakness in the defense, namely, the probable adverse testimony of a disgruntled former employee of Hermann's. None of the foregoing was presented at the trial level in affidavit form or depositions, or indeed in any form at all save for argument in the trial briefs. Even had those factual contentions been properly submitted, they would have no effect other than at best to raise a question of the carrier's judgment. Bad judgment does not equate with bad faith. Given the broad discretion that must be accorded the insurer in the disposition of claims, courts should not second guess a legitimate, albeit questionable, judgment call. There is not even a hint of bad faith here, either in the carrier's handling of the defense of the Adler claim or in its settlement of that claim.

Finally, we would add that good business judgment, to say nothing of simple civility, might suggest that a carrier in the position of this plaintiff take some step to notify its insured of its intention to settle. That recommendation, however, does not translate into a requirement that the insurer secure the insured's consent to the settlement on pain of losing its right to reimbursement of the deductible.

Judgment affirmed.

*For Affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For Reversal*—none.