759 A.2d 869 (2000)
334 N.J. Super. 353
ALAN H. FRANKEL, D.M.D., P.A., Plaintiff-Appellant/Cross-Respondent,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2000.
Decided October 17, 2000.
*870 James P. Savio, Absecon, argued the cause for appellant/cross-respondent.
Paul Daly argued the cause for respondent/cross-appellant (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Joseph R. Lowicky, Springfield, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
The opinion of the court was delivered by LINTNER, J.A.D.
Defendant, St. Paul Fire and Marine Insurance Company (St.Paul) furnished plaintiff, Dr. Alan Frankel, a dentist, with professional liability coverage under its Professional Office Package. The policy reserved to the insurer the right to investigate, negotiate and settle any suit or claim. There was no provision requiring consent to settle on the part of the insured. St. Paul settled a malpractice claim against Dr. Frankel for $650,000. Thereafter, Dr. Frankel brought suit seeking compensable and punitive damages for failing to properly investigate and settle the claim, alleging St. Paul breached its duty of good faith and fair dealing.
The initial complaint was filed on February 1, 1995, which was followed by the filing of an amended complaint in August 1998. In September 1998, St. Paul filed a motion seeking summary judgment. A judge, other than the trial judge, granted St. Paul's motion dismissing the first and third counts only, leaving the second count which alleged St. Paul acted in bad faith by wrongfully settling a claim made against Dr. Frankel by a former patient. A jury trial commenced on October 19, 1998, before Judge Higbee. She dismissed Dr. Frankel's claims for punitive damages at the close of plaintiff's case and reserved on St. Paul's motion for involuntary dismissal after all the evidence was in. The jury returned a verdict in favor of Dr. Frankel, in the amount of $31,000, finding that St. Paul acted in bad faith in the settlement of the claim against Dr. Frankel. On December 11, 1998, the judge denied Dr. Frankel's motion for new trial, set aside the jury verdict and granted judgment in favor of St. Paul. Dr. Frankel appeals Judge Higbee's orders dismissing his claims for punitive damages at the close of evidence and granting St. Paul's motion for judgment notwithstanding the verdict. St. Paul cross appeals the order denying its motion for summary judgment. We affirm.
We briefly recite the basic facts. In April 1991, Dr. Frankel's patient, Donald Kaplan, a noted trial attorney, filed a claim with St. Paul alleging that Dr. Frankel negligently failed to diagnose a sizable cyst of the right mandibular body that had been apparent on an x-ray taken in May 1988. The mass was not discovered until approximately two and one half years later at which time it had spread, becoming much larger in size. Kaplan subsequently underwent surgical removal of the growth at the Hospital of the University of Pennsylvania. According to his medical malpractice expert, Dr. Fred Rosen, he was left with facial nerve damage and a serious speech defect. Kaplan alleged that the speech defect left him permanently disabled from functioning in his profession as a senior partner with Horn, Kaplan, Goldberg & Daniels, an Atlantic City law firm, specializing in representing insured defendants in civil litigation. Kaplan and his firm had represented St. Paul's insureds in other matters.
At the time of Kaplan's claim, St. Paul insured Dr. Frankel under a professional liability policy with limits of $1,000,000. The policy had no deductible and did not require St. Paul to obtain consent from Dr. Frankel in order to authorize settlement. The policy stated "We have the right to *871 investigate, negotiate and settle any suit or claim if we believe that is proper." Kaplan's initial demand for settlement in the amount of $650,000 was conveyed to St. Paul on July 26, 1991. No counter offer was made and, within five months of receiving the initial claim, St. Paul paid Kaplan's demand.
During the trial Frankel offered the testimony of Haig G. Neville, an expert in insurance claims. Neville opined that St. Paul failed to adequately investigate and defend against Kaplan's claim. He testified that St. Paul did not meet the standards of the insurance industry concerning its investigation of the claim and communication with its insured. He concluded that St. Paul's bad faith resulted in Frankel's inability to obtain subsequent coverage in the secondary surplus market at a reasonable premium, thereby suffering damages.
St. Paul produced evidence that, in addition to the report of Dr. Rosen, it acquired a report from Dr. Joel M. Doner, a dentist who confirmed that the cyst was shown on x-rays as of May 1988, but could not delineate its size or give an opinion to a reasonable medical certainty that the nerve damage had occurred at the time of the initial x-ray. St. Paul's file also revealed conversations with an oncologist, Dr. Gene Resnick, and another dentist, Dr. Marvin Cohen. Dr. Cohen confirmed that the x-ray of 1988 revealed the cyst, and Dr. Resnick indicated that the cyst grew in the two and one-half years that it went undiagnosed. St. Paul's file also had a letter dated June 11, 1991, from Dr. Peter D. Quinn, the surgeon who removed the mass, confirming nerve injury, as well as a "thick tongue" type of speech which interfered with Kaplan's ability to practice law. St. Paul also met with and interviewed both Kaplan and Frankel and obtained information from Monarch Insurance, indicating that it had paid Kaplan's disability claim determining him to be 100% disabled.
Dr. Frankel contends that Judge Higbee erred when she 1) granted St. Paul's motion for judgment notwithstanding the verdict; 2) dismissed his claim for punitive damages at the close of plaintiff's proofs; 3) denied his motion for additur and counsel fees pursuant to R. 4:42-9(a)(6). St. Paul contends that the motion judge erred in refusing to grant its earlier motion for summary judgment on the second count of the amended complaint.
After a careful review of the entire record, we affirm substantially for the reasons stated by Judge Higbee in her written opinion of December 11, 1998. We are, however, compelled to add the following comments regarding the claim of bad faith and the legal duty imposed upon a liability insurer under the circumstances presented. Judge Higbee charged the jury in accordance with the standard set forth in Pickett v. Lloyd's, 131 N.J. 457, 621 A.2d 445 (1993). She instructed the jury that in order to establish bad faith they must find that St. Paul: 1) had no reasonable basis for settling the claim and 2) knew or recklessly disregarded the fact that there was no reasonable basis for settling as it did. In response to St. Paul's post trial motions she determined that the standard used to define bad faith to the jury was incorrect and that the proofs were insufficient to establish such a claim. She explained:
The verdict questions asked of this jury did not apply the proper standard. The "reasonable" standard of Pickett is not applicable in this type of case. The Court has considered granting a new trial with a different definition for the jury of what constitutes bad faith in this type of case. The Court finds, however, after hearing all the testimony that the facts here would not support a claim under the guidelines of the Supreme Court in the American Home [Assurance Co., Inc. v. Hermann's Warehouse Corp.], ... [117 N.J. 1, 563 A.2d 444 (1989) ] case.
Here, there was no proof that the insured suffered any losses other than an increase in premiums for a limited time. The insured's money was not at *872 stake in paying the settlement and the defendant insurance company paid hundreds of thousands of dollars of its own money to settle the claim.
As has been stated, although there where suggestions about a possible "conspiracy" to overpay Kaplan there was not a scintilla of evidence to that effect. It is almost inconceivable that an insurance company would pay this size settlement because of kindness to Mr. Kaplan. There is no proof that the decision-makers even knew him and no proof of how the settlement benefitted the insurance company's own interests. The mere fact that the insurance company overpaid and paid the demand cannot be enough to infer bad faith.
We agree. In Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 323 A.2d 495 (1974), the Supreme Court held that an insured may recover an amount in excess of the policy limit for a liability insurer's bad faith refusal to settle a third party claim within the policy limits, when the refusal results in a adverse judgment exceeding those limits. See also Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 367 A.2d 864 (1976).
In Pickett, supra, 131 N.J. 457, 621 A.2d 445 (1993), the principle that permitted an insured to recover damages for bad-faith was extended to first party claims for consequential damages resulting from inattention and delay in payment of a valid uncontested claim. Pickett involved a first party claim where the insured, an over-the-road-trucker, sought, in part, consequential damages as a result of the insurer's delay in paying collision benefits for damage to a tractor-trailer that was destroyed in a motor vehicle accident. In announcing the duty owed by an insurer, the Court emphasized that
[i]n the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits. In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay.
[Pickett, supra, 131 N.J. at 481, 621 A.2d 445.]
The standard announced in Pickett applies to an insurer's denial or refusal to pay an otherwise uncontested claim as the result of inattention. Id. at 473, 621 A.2d 445.
Although Rova Farms dealt with bad-faith in the context of a third party claim and Pickett involved a first party claim, both cases involved the failure of an insurer to pay an insured benefit afforded under the policy. Here, by contrast, the allegations of bad faith resulted from wrongful payment of a claim on behalf of an insured. American Home Assurance Co., Inc. v. Hermann's Warehouse Corp., 117 N.J. 1, 563 A.2d 444 (1989), dealt with a claim of wrongful payment of a third party claim arising from the theft of merchandise stored at Hermann's facility. Hermann's liability insurer, American Home, settled a third party's claim against Hermann's for a figure well within its policy limits, but substantially in excess of the applicable deductible self retention. American Home sought recovery after Hermann's refused to pay its deductible obligation under the policy.
In American Home, the Court recognized that an insurer's obligation to exercise good faith "depend[s] upon the circumstances of the particular case." Id. at 7, 563 A.2d 444. It pointed out that "[t]he boundaries of `good faith' will become compressed in favor of the insured depending on those circumstances" presented. Id. (citing Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62, 71, 237 A.2d 857 (1968)). It is the nature of the insured's risk that determines the obligation required by the insurer to fulfill its duty of good faith and fair dealing. American Home, supra, 117 N.J. at 7, 563 A.2d 444. For example, a liability insurer's obligation to act in good *873 faith when exposing an insured to a possible excess verdict in the face of a demand by a claimant to settle within the policy limits requires it to approach the settlement "as if there were sufficient coverage to satisfy the potential verdict-in other words, as if its own funds were at risk." Id. at 8, 563 A.2d 444.
By contrast, where the insured's deductible is at risk and the insured's consent to settle is not required, the settlement of the matter in the face of the insured's demand to litigate will not be considered manifest bad faith. Id. at 9, 563 A.2d 444. Even bad judgment on the part of an insurer, which might otherwise constitute bad faith for refusal to pay a first party claim, does not amount to circumstances constituting bad faith for wrongful payment given the insurer's broad discretion in the disposition of third party claims. Id. at 10, 563 A.2d 444. A court "should not second guess a legitimate, albeit questionable, judgment call." Id.
Applying these principles to the facts before us, we conclude that "the boundaries" of what constitutes bad faith on the part of an insurer's wrongful payment of a third party claim, where the policy does not contain a deductible or consent to settle provision, are even more confining then those presented in the facts considered in American Home. Here, Dr. Frankel's liability policy had no deductible provisions placing his funds at risk, nor did it have a consent clause giving him the right to authorize settlement on his behalf. The inherent conflict between the insurer's and insured's monetary interest existing in cases where an insurer either fails to pay a claim or seeks reimbursement of the insured's deductible is not present here. As noted by Judge Higbee, plaintiff, at best, proved that St. Paul may have acted unreasonably thus, perhaps, using bad judgment in payment of Kaplan's claim.
Under the circumstances before us, where there is neither direct monetary risk to the insured's funds nor a contractual right requiring the insured's consent, the establishment of bad faith requires proof that the insurer conspired to provide the claimant with monetary gain for reasons other than the potential validity of, or exposure to, the third party's claim. Our complete review of the record, which includes the contents of St. Paul's claim file, satisfies us that St. Paul was exposed to a substantial claim and that Judge Higbee was correct in her assessment that there was no evidence of a conspiracy to overpay Kaplan's claim. After accepting as true all the evidence supporting Dr. Frankel's claim and affording him all legitimate inferences, there was insufficient proof to establish a claim of bad faith for wrongful payment of Kaplan's claim. Dolson v. Anastasia, 55 N.J. 2, 258 A.2d 706 (1969). Judge Higbee's grant of St. Paul's motion for judgment notwithstanding the verdict was appropriate.
Insofar as St. Paul's cross-appeal, we observe that the circumstances surrounding a claim of bad faith are fact sensitive. Although there was no proof at trial that St. Paul conspired to pay Kaplan based upon its past relationship with him, the motion judge correctly denied the motion for summary judgment given the existence of the past relationship and the assertions made by plaintiff. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995).
Affirmed.