The METHODIST HOSPITAL,
Appellant,

v.

ZURICH AMERICAN INSURANCE
COMPANY, Tamera McKenney,
and Mary Vu, Appellees.

No. 14–07–00663–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 7, 2009.

Rehearing Overruled Sept. 24, 2009.

Iain Gordon Simpson, Oscar Luis Delarosa, Houston, TX, for Appellant.

Carol Patricia Keough, Houston, TX, for Appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, The Methodist Hospital ("Methodist"), sued appellees, Zurich American Insurance Company ("Zurich"), Tamera McKenney, and Mary Vu, asserting various causes of action based on appellees' allegedly improper handling and payment of workers' compensation claims filed by two Methodist employees. In a single issue encompassing several arguments, Methodist contends the trial court erred by granting summary judgment on Methodist's (1) breach-of-contract action against Zurich, (2) negligence action against all appellees, and (3) breach-of-express-warranty action against Zurich. We affirm.

## I. BACKGROUND

Zurich issued workers' compensation insurance policies ("the policy") to Methodist for various successive periods.[1] Workers' compensation claims were subject to a $1 million deductible per each accident. The parties executed a document entitled "Deductible Agreement," which outlined "the scope, description and structure" of the "Deductible Program" and "the duties and obligations of each party with respect to this Program." The Deductible Agreement consisted of the "Terms and Conditions" outlined therein and separate documents entitled "Specifications to Deductible Agreement" executed by the parties.

We will later discuss in more detail pertinent provisions of the Deductible Agreement. However, in general, Zurich agreed to handle and pay workers' compensation claims and then bill Methodist for payments within the deductible. Methodist agreed to remit all such amounts when due. To accomplish this billing and remittance, Methodist deposited a certain amount into an escrow fund and Zurich initiated a weekly electronic transfer from the fund to obtain payment for losses adjusted within the deductible.

Judith Riegert and Ana Fulton–Perez, Methodist employees, were injured during two applicable policy periods. Both employees filed workers' compensation claims. Vu was the Zurich adjuster who handled these claims, and McKenney was Vu's supervisor. The total benefits paid

1. We will refer to the two policies applicable to the workers' compensation claims at issue in this case collectively as "the policy" because the provisions pertinent to our analysis were identical.

for each claim were within the $1 million deductible.

Methodist eventually sued Zurich, McKenney, and Vu. In its live petition, Methodist pleaded (1) breach of contract against Zurich only, (2) negligence against all appellees, (3) breach of express warranty against Zurich only, and (4) a request for declaratory judgment. Methodist alleged Zurich, McKenney, and Vu improperly handled the Riegert and Fulton–Perez claims. Methodist alleged portions of the claimed injuries were not compensable because of pre-existing conditions, but appellees failed to dispute compensability within the deadline prescribed by the Texas Workers' Compensation Act ("the act") and improperly approved payment of these benefits. Because the amounts paid for each claim were within the $1 million deductible, Methodist contended it sustained damages as a direct consequence of Zurich's allegedly improper payments.

Zurich filed a traditional and no-evidence motion for summary judgment on Methodist's claim for breach of express warranty. On July 27, 2007, the trial court signed an order granting the motion and ruling that Methodist take nothing on this cause of action.

**2.** The court also dismissed without prejudice (1) any breach-of-contract action against McKenney and Vu, although Methodist had omitted this previously-pleaded claim from its live petition and (2) all counterclaims against Methodist. The order was entitled "Amended" because a previous order granting summary judgment omitted dismissal of the counterclaim. These dismissals are not at issue on appeal.

**3.** In the motions for summary judgment, appellees did not specifically address Methodist's request for declaratory judgment. However, Methodist requested merely a declaratory judgment "that the ... claims for the pre-existing injuries of [Riegert and

Appellees filed a traditional motion for partial summary judgment on the negligence and breach-of-contract actions. On September 20, 2007, the trial court signed an "Amended Order Granting Final Summary Judgment, Partial Dismissal Without Prejudice, and Dismissal Without Prejudice of Defendants' Counterclaims," ruling that Methodist take nothing on its (1) breach-of-contract action against Zurich and (2) negligence action against all appellees.[2] The court further stated the order disposed of all claims and was final and appealable.[3]

## II. Traditional Summary Judgment on Breach-of-Contract and Negligence Actions

A party moving for traditional summary judgment must establish no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). If the defendant establishes its right to summary

Fulton–Perez] are entirely Zurich's responsibility." Thus, this relief depended on Methodist's prevailing on its other theories. Further, on appeal, Methodist does not contend the trial court granted more relief than requested in the motions for summary judgment. *See Beathard Joint Venture v. W. Houston Airport Corp.,* 72 S.W.3d 426, 436 (Tex.App.-Texarkana 2002, no pet.) (recognizing appellant must raise issue on appeal that more relief than requested in motion was improperly granted in summary-judgment order). Thus, we will review summary judgment on the breach-of-contract, negligence, and breach-of-express-warranty actions.

judgment, the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.* We review a summary judgment de novo. *Knott,* 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.*

## A. Appellees' Summary–Judgment Grounds

Appellees presented separate grounds for summary judgment on the breach-of-contract and negligence actions but relied on the same case to support both grounds. To understand the parties' positions, it is helpful to first explain both grounds and Methodist's general response.[4]

### 1. Breach of Contract

In its live petition, Methodist alleged Zurich breached the parties' contract by failing to timely contest compensability of the Riegert and Fulton–Perez injuries and paying claims that were invalid because of pre-existing conditions.[5] Specifically, Methodist asserted Zurich breached the "duty to defend" set forth in the policy. Methodist also asserted Zurich breached the Deductible Agreement; Methodist did not specify a particular provision of this agreement allegedly violated but seemed to allege Zurich breached a general contractual obligation to properly handle claims.

Zurich moved for summary judgment on the ground that the policy gave Zurich complete discretion in handling and paying workers' compensation claims; consequently, its decisions to pay the claims at issue were not actionable in breach of contract. In particular, Zurich cited the following portion of the policy:

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers' compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the

---

4. Methodist filed its live pleading—the fourth amended petition—after appellees filed this motion, but before the trial court granted summary judgment. Methodist did not add any causes of action but merely more thoroughly explained the basis for its existing causes of action. Appellees' summary-judgment grounds were sufficient to encompass these causes of action even as subsequently pleaded in the live petition because they contended Methodist had no cause of action under either theory as a matter of law. *See Espeche v. Ritzell,* 123 S.W.3d 657, 664 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) ("If a motion for summary judgment is sufficiently broad to encompass later-filed claims, the movant need not amend his motion.").

5. We must note that, relative to all causes of action, the parties disagree whether Zurich was required to dispute payment of benefits for pre-existing conditions within the sixty-day deadline for contesting compensability. *See* Tex. Lab.Code Ann. § 409.021(c) (Vernon 2006). Zurich maintains a compensability challenge concerns only whether there was an injury in the course and scope of employment, whereas extent-of-injury is a separate issue, which may be raised at any time. Zurich asserts it was undisputed both Riegert and Fulton–Perez sustained injuries within the course and scope of their employment. Zurich acknowledges the employees sought benefits for pre-existing conditions, but seems to disagree it paid any such benefits. However, Zurich did not move for summary judgment on the ground there was no deadline for challenging payment of these benefits or on the ground it did not pay any invalid claims. Instead, Zurich asserted, in essence, Methodist had no cause of action as a matter of law based on any payments for invalid claims. Accordingly, solely for purposes of evaluating the summary judgments, we will assume Zurich was required to challenge payment for pre-existing conditions within the compensability deadline and paid some invalid claims.

right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Zurich also relied on *Wayne Duddlesten, Inc. v. Highland Insurance Co.*, 110 S.W.3d 85 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). In *Duddlesten*, the employer's workers' compensation policies included a retrospective premium payment plan, under which the standard annual premium would be adjusted based on amounts the insurer had paid for claims under the policy. *Id.* at 88–89. The insured sued the carrier, alleging it improperly paid several workers' compensation claims that were not covered under the policy. *Id.* at 89–90. The court of appeals affirmed summary judgment in favor of the insurer on several causes of action, including breach of contract. *Id.* at 88.

The insured maintained the policy obligated the insurer to properly investigate and adjust claims and pay only valid claims. *Id.* at 89–90. The policy contained identical language to the above-cited provisions in Methodist's policy. *Id.* The court of appeals relied on the language of Paragraph C., giving the insurer the "right to investigate and settle ... claims[,] proceedings or suits" against the insured "for benefits payable by this insurance." *Id.* at 90. The court stated the policy contained no requirement that the insurer obtain the insured's consent when settling or investigating the merits of a claim and the court was not permitted to write such a clause into the policy. *Id.* (citing *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 913–14 (Tex.App.-Dallas 1997, pet. denied), *overruled on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122–23 (Tex.2001), which held that, when policy gives absolute right to settle third-party claims, courts are not permit-

ted to "engraft any consent requirement onto [the] policy").

The court recognized a separate issue was presented on whether the insurer owed extra-contractual duties to prudently investigate and settle claims. *Id.* However, because the policy gave the insurer the right to settle claims, its discretion in investigating and paying claims was not contractually limited. *Id.* Consequently, the court held the insured had no breach of contract action against the insurer as a matter of law. *See id.* at 89–90; *see also Dear*, 947 S.W.2d at 913–15 (holding insured relinquished right to sue general liability insurer for breach of contract relative to insurer's allegedly improper handling and payment of third-party claim by purchasing policy which gave insurer right to settle). Zurich contended that, likewise, Methodist's breach-of-contract action was precluded because the policy gave Zurich the right to investigate and settle the claims at issue.

## 2. Negligence

In its live petition, Methodist alleged Zurich, McKenney, and Vu breached a purported duty to exercise ordinary care when handling the Riegert and Fulton–Perez claims. Appellees moved for summary judgment on the ground that Texas law has not recognized a cause of action by an insured for its insurer's negligent handling of an insurance claim in any context other than *Stowers*. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved) (recognizing, generally a liability insurer may be liable in tort for failing to accept a reasonable settlement demand within policy limits).

Appellees again relied on *Duddlesten*, in which the insured also alleged the insurer was negligent in handling and paying the claims at issue. 110 S.W.3d at 96–7. The court of appeals affirmed the trial court's

granting special exceptions and striking the insured's pleadings relative to its negligence cause of action. *Id.* The court stated it was unaware of any authority from the Texas Supreme Court expressly permitting a plaintiff to sue an insurer for negligent claims-handling outside the scope of *Stowers. Id.* at 97. " 'Texas law recognizes only one tort duty in this context, that being the duty stated in *Stowers* . . .' " *Id.* (quoting *Md. Ins. Co. v. Head Indus. Coatings and Servs.,* 938 S.W.2d 27, 28 (Tex.1996); and citing *Ford v. Cimarron Ins. Co.,* 230 F.3d 828, 832–33 (5th Cir.2000), in which court stated Texas law does not recognize negligence cause of action for insurer's handling, investigation, and settling of claim against insured and "*Stowers* provides the only common law tort duty in Texas in that setting").[6]

■ Unlike a *Stowers* scenario, the *Duddlesten* insured did not allege the insurer negligently failed to settle a claim when there was an offer within policy limits; rather, the insured complained the insurer was negligent by settling an invalid claim. *Id.* The court was unwilling to expand the scope of an insurer's duties to the insured absent express authorization from the Texas Supreme Court to do so. *Id.* Appellees contend that, likewise, Zurich owed no duty of ordinary care to Methodist when handling and paying the claims at issue.[7]

## B. Methodist's Contentions

■ Methodist challenges summary judgment on the breach-of-contract and negligence actions collectively. Methodist's overarching argument on both grounds is *Duddlesten* does not control because the workers' compensation claim therein was wholly payable by the insurer; *see generally* 110 S.W.3d 85; in contrast, the present case involves payment of claims within Methodist's $1 million deductible. Methodist contends that, unlike the *Duddlesten* scenario, the relationship between Methodist and Zurich was not insured/insurer for payment of claims within the deductible; rather, Methodist was self-insured for these claims and Zurich acted solely as Methodist's claims-handling agent. Methodist urges that, by virtue of this relationship, Zurich owed contractual and extra-contractual duties to properly handle these claims. Methodist also emphasizes that Zurich, when adjust-

---

**6.** A court recently recognized *Head Industrial* has since been partially superceded by statute because the *Head Industrial* court generally declined to recognize a duty of good faith and fair dealing by the insurer to the insured with respect to handling third-party claims; but suit was filed before enactment of Texas Insurance Code provisions allowing an insured to sue its insurer for unfair claims settlement practices. *Chickasha Cotton Oil Co. v. Houston Gen. Ins. Co.,* No. 05–00–01789–CV, 2002 WL 1792467, at *7 (Tex.App.-Dallas Aug. 6, 2002, no pet.) (not designated for publication). However, *Head Industrial* has not been overruled relative to an insured's attempt to impose common-law, as opposed to statutory, duties on an insurer with respect to settling third-party claims. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 776 (Tex.2007) (confirming "*Stowers* is the only common-law tort duty in the context of

third-party insurers responding to settlement demands").

**7.** In this summary-judgment ground, appellees addressed the negligence action against Zurich, but did not specifically present any ground for negating individual liability of McKenney and Vu. Nonetheless, on appeal, Methodist argues only that it had a viable negligence cause of action against Zurich. Methodist contends Zurich was vicariously liable for the actions of McKenney and Vu but does not proffer any theory for holding these individuals liable or assert the trial court granted more relief than requested in the motion by granting summary judgment in their favor. Accordingly, we will address solely whether Methodist had a cause of action against Zurich.

ing and paying claims within the deductible, was effectively spending Methodist's money because it was entitled to automatic reimbursement from Methodist's escrow fund.[8]

We construe Methodist's contention regarding the parties' purported relationship of self-insured/claims-handling-agent as more applicable to the negligence action; the *Duddlesten* court relied on the parties' status when holding the *insurer* owed no extra-contractual duties to its *insured*. *See id.* at 97. The *Duddlesten* court relied on the actual policy language giving the insurer discretion to settle claims—not the parties' relationship—to negate that the insurer owed contractual duties to the insured. *See id.* at 89–90.

Nevertheless, Methodist apparently posits that the parties' relationship also imposed general contractual duties on Zurich to properly handle claims within the deductible. Alternatively, Methodist does advance the following argument that is directed solely toward the breach-of-contract ground and involves construction of the contract: *Duddlesten* is inapplicable because (1) Zurich failed to establish its actual policy language gave it discretion when handling and paying claims within the deductible, and (2) unlike the present case, *Duddlesten* did not involve an allegation of breach of the duty to defend.

We will first evaluate Methodist's challenge to summary judgment on the negligence action because this issue primarily encompasses the contention regarding the parties' relationship, followed by summary judgment on the breach-of-contract action. Finally, we will discuss Methodist's general argument that Zurich owed contractual and extra-contractual duties when handling and paying claims within the deductible because it was spending Methodist's money.

## C. Analysis—Negligence

Methodist contends *Duddlesten* is inapplicable to its negligence action because Zurich owed Methodist all duties in handling claims within the deductible that are owed by any agent to its principal, including the duty to perform the parties' contract with care.[9]

Methodist relies on Chapter 2053, Subchapter E of the Texas Insurance Code, which governs "Optional Deductible Plans" for workers' compensation insurance. *See* Tex. Ins.Code Ann. §§ 2053.201–.06 (Vernon 2009). Section 2053.202 provides:

 (a) The department shall require each insurance company writing workers' compensation insurance in this state to offer at least three optional deductible

---

8. In its reply brief, Methodist also argues for the first time that the Deductible Agreement contains a New York choice-of-law clause but Zurich did not prove entitlement to summary judgment under New York law on the breach-of-contract and negligence actions. We may not consider an issue raised for the first time in a reply brief. *See Gray v. Woodville Health Care Ctr.*, 225 S.W.3d 613, 620 (Tex.App.-El Paso 2006, pet. denied); *Howell v. Tex. Workers' Comp. Com'n*, 143 S.W.3d 416, 439 (Tex. App.-Austin 2004, pet. denied). Additionally, there is no indication Methodist requested the trial court to apply New York law. Accordingly, we review whether Zurich established entitlement to summary judgment under Tex-

as law. *See* Tex.R. Evid. 202; *Burlington N. and Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290 (Tex.App.-Fort Worth 2007, pet. withdrawn); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex.App.-Corpus Christi 1999, pet. denied).

9. Methodist cites several sources to support its assertion that an agent owes certain duties to its principal, including the duty to perform their contract with care: *City of Galveston v. State*, 217 S.W.3d 466, 478 n. 30 (Tex.2007) (Willett, J., dissenting); RESTATEMENT (THIRD) OF AGENCY § 8.07 (2006); RESTATEMENT (THIRD) OF AGENCY § 8.08 cmt. (b) (2006).

plans adopted under this section that allow a policyholder to self-insure for the amount of the deductible.

(b) The commissioner by rule shall allow an employer to enter into an agreement with an insurer for a negotiated deductible that exceeds the highest deductible available under a plan described by Subsection (a).

*Id.* § 2053.202.

Section 2053.203 then outlines the method for payment of claims and reimbursement under an optional deductible plan:

(a) An insurance company issuing a deductible policy under this subchapter shall service all claims that arise during the policy period, including those claims payable, wholly or partly, from the deductible amount.

(b) A deductible policy must provide that:

(1) the insurance company issuing the policy shall pay all benefits that are payable from the deductible amount; and

(2) the policyholder shall make reimbursements periodically, rather than at the time claim costs are incurred.

(c) The commissioner shall adopt rules to provide for adequate security for reimbursement of the amount paid by an insurance company that is payable from the deductible amount.

*Id.* § 2053.203.

■ Methodist suggests its Deductible Agreement was a deductible plan as contemplated under these provisions; thus, Methodist was self-insured for the deductible and Zurich was merely its claims-handling agent or claims contractor.

Zurich argues the Deductible Agreement was not a deductible plan under these provisions. Zurich asserts the parties' contract demonstrates Methodist was solely Zurich's insured with a high deductible—not self-insured. Further, Zurich emphasizes it is undisputed Methodist was not certified as required for a private, individual employer to be self-insured under the workers' compensation act.[10] *See* Tex. Lab.Code Ann. § 407.041 (Vernon 2006) (providing that such an employer who desires to self-insure must obtain a certificate of authority); Tex. Lab.Code Ann. § 401.011(6) (Vernon Supp. 2008) (defining "Certified self-insurer" to mean "a private employer granted a certificate of authority to self-insure, as authorized by [the act], for the payment of compensation"); Tex. Lab.Code Ann. § 401.011(27) (defining "insurance carrier" to mean "(A) an insurance company; (B) a certified self-insurer for workers' compensation insurance; (C) a certified self-insurance group under Chapter 407A; or (D) a governmental entity that self-insures, either individually or collectively"). Zurich asserts that a private, individual employer either purchases workers' compensation insurance, obtains certification to self-insure, or is considered a non-subscriber. *See* Tex. Lab.Code Ann. § 406.003 (Vernon 2006) (providing, "an employer may obtain workers' compensation coverage through a licensed insurance company or through self-insurance as provided by this [act]."). Therefore, according to Zurich, section 2053.202 merely provides that a carrier must *offer* deductible plans, which allow an employer, who is certified, to choose to self-insure for the deductible amount, but Methodist's Deductible Agreement was not such a plan.

---

10. Zurich presented the affidavit of its attorney who averred that, at an oral hearing in this case, Methodist's attorney stated on the record it is not a "certified" self-insurer for workers' compensation.

Methodist asserts there is no requirement under section 2053.202 that an employer be certified to purchase a deductible plan outlined therein. *See* Tex. Ins. Code Ann. § 2053.202. The gist of Methodist's argument is that every agreement governing reimbursement of a deductible is an optional deductible plan contemplated by section 2053.202; thus, "every employer holding a deductible reimbursement workers' compensation policy is self-insured for the amount of the deductible."

We need not decide whether an employer must be certified as a self-insurer to purchase an optional deductible plan under section 2053.202 because we conclude the Deductible Agreement in this case was not such a plan. We recognize the Deductible Agreement operated somewhat like a plan under section 2053.202 because Zurich was required to service and pay claims before obtaining periodic reimbursement from Methodist and an escrow fund was established to provide adequate security for reimbursement. *See id.* §§ 2053.202, .203. However, section 2053.202 does not provide that every deductible-reimbursement agreement is automatically a plan outlined in the statute. *See id.* § 2053.202. As we construe the statute, it merely provides there exist plans that allow the employer to self insure and a carrier must offer these plans as an option. *See id.*

In this case, the Deductible Agreement indicated it was not such a plan and Zurich was Methodist's insurer with respect to claims within the deductible. The terms,

"self-insured," "self-insurance," or "self-insurance retention" were never mentioned in the Deductible Agreement. There was no provision stating the insurance coverage did not begin until the $1 million layer was exhausted. Further, nothing in the Deductible Agreement gave it the character of solely a claims-handling agreement divorced from the terms of the insurance policy for claims within the deductible.

Rather, the Deductible Agreement expressed that it was interrelated with the policy: "The Program has two primary, independent components: (1) *the insurance coverage provided under the Polic(ies);* and (2) the cash flow benefits achieved through the financing arrangement under the Program." (emphasis added). Moreover, the Deductible Agreement explicitly provided that Zurich would "handle and pay the claims presented *in accordance with the provisions of the Policy(ies)* ... and bill [Methodist] for the claim payments within the Deductible Amount(s) ... as stated in the Specifications." (emphasis added).

In sum, because section 2053.202 does not provide that every agreement concerning reimbursement of a deductible is a plan governed by the statute and the Deductible Agreement does not indicate Methodist was self-insured, we decline to hold the Deductible Agreement was such a plan. We conclude the relationship between Methodist and Zurich was insured/insurer with respect to claims within the deductible.[11] Accordingly, Texas law negates Methodist's contention that Zurich

11. We disagree with the concurrence's suggestion that we have misconstrued Methodist's argument as relying solely on section 2053.202 to urge that the parties did not have an insured-insurer relationship, rather than on the contract or common-law. We have discussed that Methodist relies on both the contract and section 2053.202 because we have explained Methodist's position that the Deductible Agreement (part of the contract)

demonstrated it was a plan under the statute and that Methodist was self-insured. Further, we disagree that we have based our conclusion that the parties had an insured/insurer relationship solely on a finding that section 2053.202 does not apply. We have discussed why the parties' contract shows an insured/insurer relationship, which also negates application of section 2053.202. Finally, we disagree that Methodist relies on common-law to

owed a duty to perform with care.[12] We decline to acknowledge a duty with respect to handling and paying claims within the deductible that has not been recognized under Texas law.[13]

### D. Analysis—Breach of Contract

■ As we have explained, although its position is not exactly clear, Methodist apparently suggests the parties' purported relationship of self-insured/claims-handling-agent also imposed contractual duties on Zurich to properly handle and pay claims within the deductible. Because we have rejected Methodist's contention regarding the parties' relationship, we also reject this suggestion.

Moreover, regardless of how the parties' relationship is characterized, like the *Duddlesten* court, we must consider the terms of their contract when evaluating the contractual duties owed by Zurich to Methodist and enforce it as written. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006) (stating court's primary concern when interpreting contract is to ascertain and give effect to intent of parties as expressed in the contract); *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965) (recognizing court must enforce unambiguous contract according to its terms); *see also Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995) (stating interpretation of insurance policy is governed by same rules of construction applicable to other contracts). Consequently, we will address Methodist's alternative arguments that involve construction of the parties' contract.

### 1. Discretion When Investigating and Paying Claims Within Deductible

urge the parties did not have an insured/insurer relationship. As we have discussed, Methodist indeed relies on common-law to argue Zurich owed a duty to Methodist based on the lack of an insured/insurer relationship, i.e. a duty to perform the contract with care; but this contention is distinct from Methodist's reliance on the statute and contract to negate that relationship in the first place. To quote Methodist, "[t]he relationship between Methodist and Zurich is defined both by contract and by statute." Appellant's Brief at p. 14. Of course, we have acknowledged that Methodist seeks to impose a duty under common-law—that is what this "negligence" section ultimately concerns.

12. Contrary to the concurrence's assertion, our decision is grounded on authority from the Texas Supreme Court, and not just a sister-court case, because *Duddlesten* relied on, and we have quoted, the *Head Industrial* court's recitation of the rule that an insurer owes no common-law duty to its insured relative to handling a claim against the insured outside the *Stowers* context (the same quotation cited in the concurrence). We have emphasized *Duddlesten* because it is an example of a court's applying that rule to facts somewhat similar to this case, i.e., an insured's allegation that its insurer improperly paid an invalid claim against the insured, thereby causing financial loss to the insured. Methodist does not seem to dispute the general no-duty law; rather, it argues this rule is inapplicable in this case because the parties' relationship was not insured/insurer or there is some sort of exception when a claim falls within the deductible. Therefore, instead of discussing the history of the no-duty rule, such as the language in *Ranger County Mutual Insurance Co. v. Guin,* 723 S.W.2d 656, 659 (Tex.1987) later recognized as dictum, we have focused on application of that established law to a scenario similar to the present case—*Duddlesten*—and rejected Methodist's contention that this law should not apply to the present case.

13. We do not necessarily conclude that, even if the Deductible Agreement were an optional deductible plan under section 2053.202, the relationship between Zurich and Methodist lost its character as insured/insurer or that Zurich owed a duty to perform with care relative to handling claims within the deductible, despite use of the term "self-insure" in the statute. We need not reach that issue because we have concluded the Deductible Agreement was not a plan under section 2053.202.

First, Methodist contends *Duddlesten* is inapplicable because Zurich failed to establish the policy language granting it discretion when investigating and paying claims extended to those within the deductible. As Methodist asserts, the policy provision granting Zurich the "right to investigate and settle these claims, proceedings or suits" referred to "any claim, proceeding or suit against [Methodist] for *benefits payable by this insurance.*" (emphasis added). Methodist argues (1) the emphasized language demonstrated Zurich had the right to settle only claims for which it was ultimately responsible or (2) based on existence of the deductible, there was a latent ambiguity on whether Zurich had the right to settle all claims or only those for which it was ultimately responsible. *See CBI Indus., Inc.*, 907 S.W.2d at 520 (recognizing latent ambiguity arises when contract unambiguous on its face is applied to subject matter with which it deals and ambiguity appears by reason of some collateral matter). We disagree with both contentions.

Because the Deductible Agreement governed the deductible program and was interrelated with the policy, we must construe these writings together when determining the parties' contractual duties relative to claims within the deductible. *See Seagull Energy E & P, Inc.*, 207 S.W.3d at 345 (stating that court, when interpreting contact, must examine and consider entire writing in an effort to harmonize and give effect to all provisions so none will be rendered meaningless; no single provision will be given controlling effect, but rather, all provisions must be considered with reference to the whole instrument).[14]

■ Significantly, as we have mentioned, the Deductible Agreement provided Zurich would "handle and pay the claims presented *in accordance with the provisions of the Policy(ies)* and bill [Methodist] for the claim payments within the Deductible Amount(s) ... as stated in the Specifications." (emphasis added). The Deductible Agreement did not prescribe any special rules applicable to handling or paying claims within the deductible. Specifically, there was no provision modifying Zurich's "right to investigate and settle the claims, proceedings or suits" relative to benefits within the deductible or otherwise requiring Methodist's consent to pay such claims. The Deductible Agreement simply required Zurich to handle and pay these claims before obtaining reimbursement from Methodist under the methods for billing and remittance outlined therein. Accordingly, construing the entire contract, we conclude the provision in the policy granting Zurich the discretion to settle "any claim, proceeding or suit" against Methodist "for benefits payable by this insurance" encompassed all claims for workers' compensation benefits, including those within the deductible.

### 2. Applicability of *Duddlesten* to Action for Breach of Duty to Defend

Methodist also contends *Duddlesten* is not controlling because, unlike the present case, it did not involve an allegation of breach of the duty to defend. As Methodist asserts, both the *Duddlesten* insured and Methodist contended the insurer had a contractual obligation to pay only valid

---

14. Methodist cites the terms of a "Large Deductible Endorsement" attached to the policy when arguing it was latently ambiguous. However, the separate Deductible Agreement, which Methodist cited in its petition and attached to its summary-judgment response, stated that it "governs the structure and operation of and the duties and obligations of each party to this [Deductible] Program and *supercedes any Deductible endorsements* to the Policy(ies) ..." (emphasis added).

claims, but they relied on different policy language.

The *Duddlesten* insured argued the insurer's obligation derived from Paragraph B. of the pertinent policy provisions, which stated the insurer "will pay ... benefits required of you by the Workers' Compensation law." 110 S.W.3d at 90. However, the court reasoned the insurer's actions taken pursuant to Paragraph C., which gave it the "right to investigate and settle these claims[,] proceedings or suits," determined whether it was required to pay benefits pursuant to Paragraph B.; i.e., if the insurer exercised its right to settle a claim under Paragraph C., payment was required of the insurer under Paragraph B. *Id.*

Methodist relies on Paragraph C. providing, "We have the ... duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance." As Methodist asserts, the *Duddlesten* court did state, "Appellant does not argue that appellees failed to defend it from any suits or claims against it, but rather, appellees did not properly investigate and adjust the claims according to its duties under the policy." 110 S.W.3d at 90. However, the court did not suggest its conclusion would be different if the employer had asserted the insurer's payment of an invalid claim constituted breach of the duty to defend. *See id.* at 89–90. Rather, the court's statement could be interpreted as suggesting the employer's allegation did not equate to a contention the insurer breached the duty to defend. At most, the court did not expressly address whether an insured would have a viable cause of action if it alleged an insurer's payment of an invalid claim violated the duty to defend. *See id.* We conclude the provision giving the insurer the right to settle negates existence of a contractual obligation to pay only valid claims, regard-

less of the different policy provisions cited by the *Duddlesten* insured and Methodist.

Under its plain meaning, the "duty to defend ... any claim ... for benefits payable by this insurance" merely imposed an obligation on Zurich to assume responsibility for handling a claim when benefits are payable under workers' compensation law. *See Burlington Ins. Co. v. Tex. Krishnas, Inc.*, 143 S.W.3d 226, 229 (Tex.App.-Eastland 2004, no pet.) (recognizing, in context of general liability policy, if petition contains allegations which, when fairly and reasonably construed, state cause of action potentially covered by policy, insurer has duty to defend insured in underlying suit). Methodist does not allege Zurich refused to handle and pay claims for compensable injuries. Rather, Methodist alleges Zurich paid claims for injuries that were *not* compensable.

A federal court applying Texas law has considered a similar issue, albeit in an unpublished opinion. The insured sued his general liability insurer alleging, among other theories, breach of contract for settling a third-party claim that the insured considered "utterly frivolous" and "completely defensible." *Kreit v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A.H–04–1600, 2006 WL 322587, at *1 (S.D. Tex. Feb. 10, 2006). The policy required the insurer to defend any suit for damages covered under the policy and vested the insurer with the right to investigate, negotiate, and settle any suit as it deemed appropriate. *Id.* The insured contended the insurer breached the policy by "not really defending" the suit. *Id.* at *4. When granting summary judgment for the insurer, the court cited the provision unambiguously allowing the insurer to settle the suit and rejected the suggestion its obligation to provide a defense meant it was required to take the suit to trial. *Id.* at *5.

Likewise, we reject Methodist's suggestion that the duty to defend required Zurich to dispute payment for any benefits that might not be due under workers' compensation law. This interpretation would render meaningless the provision immediately following that gave Zurich the right to settle claims. Accordingly, the duty-to-defend provision did not impose an obligation to pay only valid claims.[15]

### E. General Contention Zurich Owed Duties When Spending Methodist's Money

Finally, Methodist urges Zurich owed contractual and extra-contractual duties to properly handle and pay claims within the deductible because it was effectively spending Methodist's money. This argument was apparently interwoven with Methodist's other contentions, which we have rejected. Nonetheless, to the extent Methodist suggests that, despite the right-to-settle provision negating any such contractual duty and lack of Texas authority imposing an extra-contractual duty, Methodist should have legal recourse because the money "came from [its] pocket," we disagree.

Notably, the *Duddlesten* insured argued the insurer should be liable for negligent claims handling because it had less incentive to dispute invalid claims when it would be reimbursed by the insured pursuant to the retrospective premium payment plan. 110 S.W.3d at 97. The court specifically rejected this argument relative to the insured's negligence ac-

tion—not breach-of-contract. *See id.* at 89–90, 97. But, obviously, this argument did not sway the court when rejecting both causes of action as a matter of law. *See id.* at 89–90. We acknowledge a retrospective premium payment plan is not the same as a deductible. Nevertheless, the fact the insured might incur financial loss if the insurer paid an invalid claim did not persuade the court to disregard the right-to-settle provision or impose an extra-contractual duty not recognized under Texas law. *See id.* at 97; *see also Dear,* 947 S.W.2d at 912, 913–15 (holding insured had no viable breach-of-contract or negligence theories of recovery for liability insurer's improper handling and settlement of third-party claim, although he complained its actions caused him loss of business and increased costs for professional liability insurance, because he was bound by terms of policy he purchased, including provision vesting insurer with right to settle any claim).

In fact, a Texas court has addressed, albeit in an unpublished opinion, an insured's complaint its general liability insurer improperly investigated and settled a suit for an amount that invoked the insured's high deductible, despite its disapproval. *Stevens Transport, Inc. v. Nat'l Cont'l Ins. Co.,* No. 05–98–00244–CV, 2000 WL 567225 (Tex.App.-Dallas May 11, 2000, no pet.) (not designated for publication). In affirming a directed verdict for the insurer on all causes of action, including breach of contract and negligence, the court of appeals relied on the policy provi-

---

**15.** Methodist also cites testimony of Lisa Schorfheide, Zurich's Assistant Vice President and Claims Manager. According to Methodist, Schorfheide admitted Zurich owed Methodist contractual obligations to properly handle claims by testifying the policy required Zurich to "handle ... and adjust claims in accordance with the [Texas workers' compensation] rules and statutes" and that Zurich's customers depend on it to correctly dispute non-compensable claims. However, Schorfheide's testimony does not change our analysis because Zurich's obligations under the policy are a matter of contract interpretation and a question of law for the court—not subject to a witness's opinion. *See Matagorda County Hosp. Dist. v. Burwell,* 189 S.W.3d 738, 740 (Tex.2006) (per curiam).

sion unambiguously vesting the insurer with an absolute right to settle third-party claims based on its own discretion. *Id.* at *3. The court stated, "[b]y purchasing an insurance policy that did not give [the insured] the right to reject a settlement of third party claims, [it] gave up the right to complain that the settlement caused it damages" and *"mere presence of the large deductible does not change the result." Id.* (emphasis added).

Additionally, courts in several other jurisdictions have reached the same conclusion when addressing an insured's refusal to reimburse its general liability insurer for a deductible or retention because a claim was settled over the insured's objection; the courts rejected the insured's suggestion that a right-to-settle provision should not be enforced solely because the insured's funds were at stake, reasoning the insured was bound by its contract. *See Am. Prot. Ins. Co. v. Airborne, Inc.,* 476 F.Supp.2d 985, 987, 990–92 (N.D.Ill. 2007) (applying Illinois law and holding insured cannot complain right-to-settle provision inevitably allows insurer to commit insured's funds without its consent because "that is exactly the bargain that the insured struck under the policy that it bought and paid for"); *United Capitol Ins. Co. v. Bartolotta's Fireworks Co., Inc.,* 200 Wis.2d 284, 546 N.W.2d 198, 199–202 (1996) (rejecting insured's suggestion "Self Insured Retention Endorsement" somehow separated single policy into two, leaving insured with authority over claims within the deductible and insurer with

power over remainder and that it was in unfair position and subject to exploitation by insurer because, among other reasons, "insureds who are burned by one insurance company may find refuge in the marketplace by seeking coverage from another insurer"); *Am. Home Assurance Co. v. Hermann's Warehouse Corp.,* 117 N.J. 1, 563 A.2d 444, 448 (1989) (recognizing, insured has "bargained away whatever rights might otherwise be created by" inherent conflict between insured and insurer when policy contains deductible and right-to-settle clause, contours of the arrangement are negotiable in commercial setting, and insured is not foreclosed from obtaining coverage with no deductible if it wishes to pay for such additional consideration).[16]

We find *Stevens Transport* and these decisions from other jurisdictions persuasive in the present case because Texas has a "strong commitment to the principle of contractual freedom" and its "indispensable partner-contract enforcement." *See Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 371 (Tex.2001); *In re Wells Fargo Bank Minn., N.A.,* 115 S.W.3d 600, 607 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied] ); *see also Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 162 (Tex.2003) ("we may neither rewrite the parties' contract nor add to its language."). In short, Methodist seeks to impose contractual and extra-contractual duties that are contrary to the terms of the contract for which it bargained.[17]

---

**16.** Some courts have held the opposite and concluded an insured must consent to a payment that commits the deductible, despite a right-to-settle provision, because the insured has a direct financial stake. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.,* 584 So.2d 1316, 1324–27 (Ala.1991); *Nat'l Serv. Indus., Inc. v. Hartford Accident & Indem. Co.,* 661 F.2d 458, 462 (5th Cir.1981)

(applying Georgia law); *see also* Jon Epstein, Annotation, *Liability of insurer to insured for settling third-party claim within policy limits resulting in detriment to insured,* 18 A.L.R.5th 474 (1994). However, these cases represent the minority view. *See Airborne, Inc.,* 476 F.Supp.2d at 990 n. 4.

**17.** Although these courts in other jurisdictions refused to nullify a right-to-settle provision

We also acknowledge the above-cited decisions involved general liability policies—not specifically workers' compensation policies. Nevertheless, their reasoning is even more compelling in the workers' compensation setting. In particular, the act prohibits an employer, other than a certified self-insured, from exercising control over claims handling and settlement. *See* Tex. Lab.Code Ann. § 415.002(a)(6) (Vernon 2006) (stating an insurance carrier, or its representative, commits an administrative violation if it "allows an employer, other than a self-insured employer, to dictate the methods by which and the terms on which a claim is handled and settled"). Because Methodist was not a certified self-insured, we have no option but to enforce the provision giving Zurich discretion to settle claims within the deductible. Methodist argues it did not seek to exercise discretion but only insisted that Zurich act reasonably. However, if Zurich had adjusted a claim knowing that, after the fact, it may be required to account to Methodist for the reasonableness of its decisions, Methodist would have indirectly influenced handling and settlement of the claim.

Finally, we reject Methodist's suggestion it should have recourse because Zurich bore no risk when handling Methodist's funds. To the contrary, along with its discretion in handling claims, Zurich, as insurance carrier, was the party who faced potential liability to the employee with respect to claims-handling. *See Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 211–12 (Tex.1988) (recognizing workers' compensation insurance carrier owes employee duty of good faith and fair dealing in processing compensation claims). Methodist certainly does not admit it was personally liable to its employees for the manner in which claims were handled. Consequently, we decline to approve a scenario in which Methodist indirectly retained discretion over Zurich's handling and settlement of claims, yet Zurich, not Methodist, was potentially liable to an employee for claims-related decisions.

In sum, the trial court properly concluded that, as a matter of law, Methodist had no cause of action for breach of contract or negligence against Zurich.

### III. Summary Judgment On Cause of Action for Breach of Express Warranty

Zurich's motion for summary judgment on the breach-of-express-warranty action included both traditional and no-evidence grounds. When, as in this case, the trial court does not specify in the order the grounds relied on in granting summary judgment, we must affirm the summary judgment if any of the grounds presented are meritorious. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005); *Pico v. Capriccio Italian Rest.,* 209 S.W.3d 902, 905 (Tex.App.-Houston [14th Dist.] 2006, no pet.). We conclude the trial court properly granted the no-evidence motion.

solely because the insured's funds were at stake, they concluded the insurer must exercise the duty of good faith that is the normal expectation under any contract. *See Airborne, Inc.,* 476 F.Supp.2d at 995; *Bartolotta's Fireworks Co.,* 546 N.W.2d at 202–03; *Hermann's Warehouse Corp.,* 563 A.2d at 448. We do not address whether Texas law recognizes such a duty when a workers' compensation carrier adjusts a claim within a deductible because Methodist did not plead bad faith, but merely negligence. These courts did not directly address a negligence allegation although they seemed to suggest mere negligence was insufficient to negate a right-to-settle provision when holding the provisions at issue were enforceable because the evidence showed, at most, "bad judgment" or "a bad call"—not bad faith. *See Airborne, Inc.,* 476 F.Supp.2d at 995; *Hermann's Warehouse Corp.,* 563 A.2d at 448; *see also Bartolotta's Fireworks Co.,* 546 N.W.2d at 202–03 (evidence showed, at most, insurer paid too much for settlement—not that it acted in bad faith).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Urena,* 162 S.W.3d at 550; *Pico,* 209 S.W.3d at 905. Unless the respondent produces summary-judgment evidence raising a genuine issue of material fact, the trial court must grant the motion. Tex.R. Civ. P. 166a(i); *Urena,* 162 S.W.3d at 550; *Pico,* 209 S.W.3d at 905. To defeat a no-evidence motion for summary judgment, the non-movant need not marshal its evidence, but must point out in its response evidence raising a genuine issue of fact as to the challenged elements. *See* Tex.R. Civ. P. 166a(i) cmt.; *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002); *Pico,* 209 S.W.3d at 912.

The parties disagree on all elements of a claim for breach of express warranty for services, but they agree the plaintiff must prove at least the following: the defendant sold services to the plaintiff; the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, promise, or description; the representation became part of the basis of the bargain; the defendant breached the warranty; and the plaintiff suffered injury. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 886 (Tex.App.-Dallas 2007, no pet.) (citing *Sw. Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576–77 & n. 3 (Tex.1991); *Mills v. Pate,* 225 S.W.3d 277, 289–90 (Tex.App.-El Paso 2006, no pet.); *Great Am. Prods. v.*

*Permabond Int'l,* 94 S.W.3d 675, 681 (Tex. App.-Austin 2002, pet. denied)).[18]

In earlier petitions, Methodist set forth a very general breach-of-warranty claim. Pursuant to the trial court's order, Methodist filed a pleading entitled, "[Methodist's] Basis For Its Breach of Warranty Claims" (hereinafter "the warranty filing"), in which Methodist supplemented previous discovery responses to outline the basis for its cause of action. Subsequently, in its live pleading, Methodist more specifically outlined the basis of its action. In the warranty filing and live petition collectively, Methodist identified two categories of express warranties allegedly breached by Zurich: (1) a warranty contained in the policy; and (2) several representations made by Zurich to induce Methodist to purchase the policies. Zurich divided the no-evidence portion of its motion for summary judgment according to each of these categories.

## A. Alleged Warranty in the Policy

In its motion, Zurich asserted there was no evidence of a warranty in the policy or that Zurich breached any warranty. In the warranty filing, Methodist alleged the provision requiring Zurich to "pay ... the benefits required of [Methodist] by the workers compensation law" constituted a warranty that Zurich would properly perform this obligation to handle and pay claims. In its summary-judgment response, Methodist generally contended the policy contained "a warranty of performance" but did not cite a specific provision. Thus, we will consider only whether the above-quoted policy provision constituted a

18. The parties disagree whether a plaintiff must also prove it notified the defendant of the breach if notification is required by their agreement. *See Paragon Gen. Contractors,* 227 S.W.3d at 886 (listing notification as an element but citing cases in which notification was not expressly set forth as an element). We need not decide whether notification is an element because Methodist failed to present evidence raising a genuine issue of material fact on breach or resulting damages, which undisputedly are elements.

warranty.[19]

■ Once again, the principle enunciated in *Duddlesten* regarding the insurer's discretion to settle claims negates Methodist's contention. We recognize the *Duddlesten* court addressed a breach-of-contract, as opposed to breach-of-warranty, action. Nevertheless, its reasoning is applicable here because the *Duddlesten* insured advanced the exact argument to support its breach-of-contract action that Methodist urges to support its breach-of-warranty action. *See* 110 S.W.3d at 89–90. Additionally, although breach of warranty and breach of contract are distinct causes of action with separate remedies, an express warranty is part of the basis of the bargain and contractual in nature. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex.2008). Consequently, when ascertaining the parties' intentions in a warranty, we look to well-established rules for interpretation and construction of contracts. *Id.* at 61.

■ As we have discussed, based on the insurer's right to settle claims, the *Duddlesten* court held that an identical provision did not impose an obligation on the insurer to properly investigate and adjust claims and pay only valid claims. 110 S.W.3d at 89–90. Likewise, because Zurich had the right to settle claims, this provision cannot have constituted a warranty it would properly handle, and pay only valid, claims. Accordingly, Methodist failed to raise a genuine issue of material fact on existence of a warranty in the policy.[20]

## B. Representations Allegedly Constituting Warranties

In its petition, Methodist alleged Zurich made the following representations and promises to induce Methodist to purchase the policy:

- Zurich would set team meetings for the applicable account team three times per year to review Zurich's commitments to Methodist and ensure that Zurich was meeting them;
- Zurich had experienced and expert personnel to handle all claims;

**19.** In its live petition and the sections of its summary-judgment response and brief assailing the no-evidence ground, Methodist did not specifically mention a warranty contained in the policy; instead, it focused on the representations allegedly made to induce purchase of the policies. However, in the portions of its response and brief that seem directed toward Zurich's traditional ground, Methodist argued the policy contained a warranty. Because, at some point in its response and brief, Methodist mentioned a purported warranty in the policy, we will consider whether reliance on the above-quoted policy language raised a genuine issue of material fact regarding existence of a warranty sufficient to defeat the no-evidence motion.

**20.** Zurich mentioned *Duddlesten* only with respect to its motion for summary judgment on breach of contract and negligence. Relative to the breach-of-warranty action, the parties focused on whether any promise to properly handle, and pay only valid, claims sounded in warranty in addition to contract. Nonetheless, because we are now addressing a no-evidence motion, once Zurich asserted there was no evidence of a warranty, the burden shifted to Methodist to raise a fact issue on existence of a warranty; therefore, we may rely on the *Duddlesten* principle when determining that Methodist failed to meet that burden. *See Chrismon v. Brown*, 246 S.W.3d 102, 113 n. 12 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (stating motion for summary judgment asserting simply there was no evidence of duty element of negligence action shifted burden to non-movant to raise fact issue and allowed court to consider legal principle pertinent to duty analysis although principal was not mentioned in the no-evidence motion); *Pico,* 209 S.W.3d at 912 (same). We need not decide whether a promise to properly handle, and pay only valid, claims sounded in both contract and warranty because the policy contained no such promise.

- Zurich would provide protection, listen for and anticipate Methodist's risk management needs and offer cost-effective solutions;

- Zurich would provide a customized claims program that would control Methodist's loss costs;

- Zurich would help Methodist recognize characteristics of fraud and challenge fraudulent claims successfully;

- Zurich would perform large case reviews in which Zurich's team of experts would assure that a systematic approach is used in establishing an ultimate loss reserve;

- Zurich would work to ensure that goals and commitments concerning cost reduction and loss savings were being met; and

- Zurich would provide individualized service at a high level and tailored to meet the particular circumstances and requirements of Methodist.

In its motion for summary judgment, Zurich asserted there was no evidence of the following elements: the representations were statements of fact that constituted warranties, as opposed to opinions; the representations became part of the basis of the bargain for the policies applicable to the claims at issue; Zurich breached the alleged warranties; Method-ist suffered resulting injuries; or Methodist notified Zurich of any breach.

In response, Methodist presented the affidavit of Beau Harrison, System Director, Corporate Risk & Insurance Department for the Risk Management Group of Methodist. Harrison averred that Pam Mitchell, Zurich's Vice–President for customer service, orally "warranted" the above-cited list of representations while initially attempting to sell insurance to Methodist. Harrison further stated he relied on these representations when deciding to purchase insurance from Zurich and each year when electing to renew coverage.[21]

The parties disagree whether these representations were positive averments of fact as required to constitute warranties. We will assume, without deciding, the representations constituted warranties because we conclude Methodist failed to present evidence of any breach or resulting damages. To raise a fact issue on these elements, Methodist relied on Harrison's affidavit plus McKenney's deposition testimony.

### 1. Harrison's affidavit

Methodist contended paragraph 11 of Harrison's affidavit raised a genuine issue of material fact on the breach and resulting-damages elements. After explaining Methodist's obligation to reimburse Zurich

21. In the warranty filing, Methodist asserted the representations forming the basis for its breach-of-express-warranty action were contained in a risk binder issued by Zurich. When moving for summary judgment, Zurich contended, for several reasons, the representations in the risk binder did not form the basis of the bargain for the policies at issue and were no longer effective once these policies were issued. In its response, Methodist attempted to avoid summary judgment on this ground by contending Zurich was mistaken regarding the source of the representations, although Zurich merely relied on Methodist's own warranty filing regarding their source. Methodist asserted the representations were made orally by Mitchell to Harrison, although they were also subsequently outlined in the risk binder, and extended to all subsequent policies at issue. Because Methodist relied on Harrison's affidavit in response to the no-evidence motion, we will consider Zurich's oral statements to him as the source of the representations when evaluating the summary judgment. Further, regardless of the source of the representations, Methodist failed to present evidence Zurich breached these representations or that any breach resulted in damages to Methodist.

for payments within the deductible, Harrison continued:

By paying claims which were not compensable with respect to the workers compensation claims of [Fulton–Perez and Riegert], Zurich caused Methodist to pay for amounts that were not contemplated under the insurance policy, the Deductible Agreement, or the Specifications to Deductible Agreement. Methodist was damaged as a result. It is my opinion that Zurich failed to fulfill the Warranties to Methodist and that Zurich's improper payment of non-compensable workers compensation benefits for [Fulton–Perez and Riegert] directly resulted from Zurich's failure to fulfill the Warranties. More specifically, Zurich's failure to satisfy the Warranties caused it to miss the deadline for contesting compensability because Zurich's adjuster lacked the appropriate experience and was not properly supervised and because Zurich did not provide the customized claims programs that it promised.

 In the trial court, Zurich objected that these statements were legal and factual conclusions and therefore were not competent summary judgment evidence. The record does not reflect a ruling on the objections. However, because a conclusory affidavit is substantively defective, failure to obtain a ruling on an objection does not waive a challenge to the defect and the objection may be considered on appeal. *See Paragon Gen. Contractors,* 227 S.W.3d at 883; *Pico,* 209 S.W.3d at 909. Conclusory statements in affidavits are insufficient to raise a fact issue. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996); *Paragon Gen. Contractors,* 227 S.W.3d at 883; *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Paragon Gen. Contractors,* 227 S.W.3d at 883; *Rizkallah,* 952 S.W.2d at 587. A conclusory statement can be either a legal conclusion or factual conclusion. *See Rizkallah,* 952 S.W.2d at 587.

Harrison's averments arguably concerned only two of the representations on which Methodist relied to support its breach-of-warranty action: "Zurich had experienced and expert personnel to handle all claims"; and "Zurich would provide a customized claims program that would control Methodist's loss costs." Even if Harrison's affidavit was some evidence Zurich breached these warranties, his averments regarding resulting damages were at least factual conclusions. Harrison asserted Methodist sustained damaged because it was required to reimburse Zurich for paying benefits for non-compensable injuries. Accordingly, Harrison's contention regarding causation hinged on his assertion, "Zurich's failure to satisfy the Warranties caused it to miss the deadline for contesting compensability because Zurich's adjuster lacked the appropriate experience and was not properly supervised and because Zurich did not provide the customized claims programs that it promised."

 However, Harrison provided no facts indicating Zurich's purported inadequacies caused its failure to challenge compensability of the claims; instead, he merely made a bare assertion there was a causal connection. *See id.* at 587 (holding plaintiff car owner's averment in affidavit that certain actions by defendant mechanic caused damage to plaintiff's car were conclusory because she provided no factual support). In fact, Harrison stated the assertions were his "opinion." *See Ryland Group, Inc.,* 924 S.W.2d at 122 (recognizing that an interested witness's affidavit reciting he "estimates" or "believes" cer-

tain facts to be true will not support summary judgment). Accordingly, Harrison's averments were substantively defective and did not constitute evidence that any breach of the warranties mentioned in paragraph 11 resulted in damages to Methodist.

### 2. McKenney's deposition testimony

At the time of the injuries at issue, McKenney was employed by Zurich as a workers' compensation team manager. She managed a group of adjusters and provided guidance on handling claims, including those by Methodist employees. In its summary-judgment response, Methodist cited testimony from McKenney that again arguably concerned only the following representations on which Methodist relied to support its breach-of-warranty action.[22]

***Zurich would set team meetings for the applicable account team three times per year to review Zurich's commitments to Methodist and ensure that Zurich was meeting them.***

■ First, according to Methodist, McKenney testified she could not recall attending any "team meetings" to ensure Zurich was meeting its commitments to Methodist. However, in the exact representation at issue, Zurich promised to conduct meetings for the applicable *"account team"* (emphasis added). In fact, consistent with this representation, McKenney was asked: "Did the [Methodist] *account* team at Zurich have any team meetings in 2005 specifically to discuss Zurich's commitments to [Methodist]?" (emphasis added). McKenney responded she was "not aware of any meetings that we had to

discuss specifically [Methodist]." She later clarified she lacked knowledge of "*account* team" meetings because "[t]hat was not part of our department" and "would be underwriting, risk management or whoever" (emphasis added). Because "*account* team" meetings were outside McKenney's area of knowledge and responsibility, her testimony was not evidence Methodist breached this warranty (emphasis added).

***Zurich would provide protection, listen for and anticipate Methodist's risk management needs and offer cost-effective solutions.***

■ Next, Methodist asserted McKenney testified she was unaware of any "cost-effective solutions" offered by Zurich. However, Methodist cited her testimony out of context. McKenney did answer "[n]ot that I am aware of" when asked whether she or anyone at Zurich offered "cost effective solutions" to Methodist in 2005 with respect to workers' compensation claims. However, the full representation at issue clearly concerned "cost-effective solutions" relative to risk management needs—not adjustment of claims. In fact, when asked about "cost-effective solutions," she also explained, "[t]hat's not something I would be asked to do as a workers' comp team manager" and she was not involved in risk management. Again, because "anticipating risk management needs and offering cost-effective solutions" fell outside McKenney's realm of knowledge and responsibility, her testimony was not evidence Zurich breached this warranty.

---

22. Methodist did not present averments from Harrison or cite testimony by McKenney to support the breach or causation elements relative to some of the representations on which Methodist based its action for breach of express warranty. Because Methodist was required to point out in its response evidence raising a fact issue on the challenged elements, Methodist failed to raise a fact issue on breach of these representations or any resulting damages.

*Zurich would provide a customized claims program that would control Methodist's loss costs.*

 Methodist further asserted McKenney testified she was unaware of Zurich's offering any "customized claims program" to control Methodist's losses despite her responsibility to ensure claims were properly handled. However, Methodist misconstrued her testimony. She explained she did not know what Methodist's attorney meant when inquiring about a "claims program" because "[t]hat's not part of what's within my job duties" and "that is not something within the workers' comp department. That's an underwriting, risk management or something [sic] function other than ours." Once again, because implementing a "customized claims program" was outside McKenney's realm of knowledge and responsibility, her testimony was not evidence Methodist breached the warranty at issue.

 McKenney eventually agreed there was no "customized" set of procedures used to handle claims by Methodist employees differently than claims by employees of other clients; rather, for every client, each claim was handled based on the merits and individual facts. Thus, Methodist contended McKenney finally admitted there was no "customized claims program." In this regard, analysis of the breach element overlaps somewhat with Zurich's contention "customized claims program" was too general to constitute a warranty. Even if the representation regarding a "customized-claims program" related to claims-handling, it is nevertheless unclear what was meant by the term. For instance, as Methodist suggests, Zurich may have meant it would implement unique procedures for handling Methodist's employee claims. As another example, Zurich may have meant it would ensure all Methodist's employee claims were handled by certain personnel, which did occur. Because the term was not defined, McKenney's testimony that Zurich lacked a "customized" set of procedures for handling Methodist's employee claims was not evidence Zurich failed to implement a "customized claims program," as warranted.

 Finally, even if all three representations at issue were intended to relate to claims-handling and McKenney's testimony constituted evidence of breach, Methodist presented no evidence it incurred damages as a result. Methodist suggested a fact-finder might infer Zurich adjusters would have contested compensability of Riegert's and Fulton–Perez's pre-existing injuries if the adjusters had only attended "account team meetings" or Zurich had implemented "cost-effective solutions" or "a customized claims program."

This inference is a leap unsupported by any evidence. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (stating, for purposes of a no-evidence summary judgment, although evidence is viewed in light most favorable to non-movant and generally circumstantial evidence may be used to establish material fact, "[e]vidence that is so slight as to make any inference a guess is in legal effect no evidence."). Because these terms were quite broad and McKenney was unaware of their meaning, Methodist presented no evidence indicating how adjusters' participation in "account team meetings" or implementation of "cost-effective solutions" or "customized claims program" may have affected Zurich's handling of any claims. Accordingly, there was no evidence Zurich's alleged breach of these warranties caused its adjusters to improperly handle the claims at issue.

In sum, Methodist failed to present evidence raising a genuine issue of material fact in response to Zurich's no-evidence motion on the breach-of-express-warranty action.

## IV. CONCLUSION

The trial court did not err by granting summary judgment on Methodist's (1) breach-of-contract action against Zurich, (2) negligence action against Zurich, McKenney, and Vu, and (3) breach-of-express-warranty action against Zurich.

Accordingly, we overrule Methodist's sole issue and affirm the trial court's final judgment in its entirety.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The majority correctly concludes that the insurer does not owe the named insured a negligence duty as a matter of law. This conclusion, however, should be grounded on precedents from the Supreme Court of Texas rather than on section 2053.203 of the Texas Insurance Code and the decision of a sister court of appeals.

### The Contracts

Appellee Zurich American Insurance Company ("Zurich") issued two insurance policies under which Zurich is the insurer and appellant The Methodist Hospital ("Methodist") is the named insured. Each of these policies is entitled "Workers' Compensation and Employers Liability Insurance Policy," and the portions of each relevant to this case are identical. In pertinent part, these policies provide as follows:

- Zurich agrees to promptly pay, when due, the benefits required of Methodist by the workers' compensation law.
- Zurich has the duty to defend Methodist at Zurich's expense against any claim, proceeding, or suit for workers'

compensation benefits payable by this insurance.

- Zurich has the right to investigate and settle these claims, proceedings, or suits.
- Terms of the workers' compensation insurance that conflict with the workers' compensation law are changed to conform to that law.
- Workers' compensation claims for bodily injury are subject to a $1 million deductible for each accident. Methodist agrees to reimburse Zurich for claims that Zurich handles and pays within this deductible.

Zurich and Methodist also entered into a "Deductible Agreement," in which they further detailed the manner in which Methodist would reimburse Zurich for claims Zurich handled and paid that are within the policies' deductibles.

### Zurich's Arguments Regarding Methodist's Negligence Claim

In its summary-judgment motion and on appeal, Zurich has challenged Methodist's negligence claim by asserting that Zurich owes Methodist no negligence duty. Zurich argues that Texas law does not recognize a negligence duty from an insurer in favor of its insured, other than the *Stowers*[1] duty, which is not involved in this case. In this argument, Zurich relies heavily on our sister court's opinion in *Wayne Duddlesten, Inc. v. Highland Insurance Company*, 110 S.W.3d 85, 97 (Tex. App.-Houston [1 Dist.] 2003, pet. denied).

### Methodist's Arguments Regarding its Negligence Claim

In challenging the trial court's summary judgment as to its negligence claim, Methodist asserts the following arguments:

---

1. See *Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 546–48 (Tex. Comm'n App. 1929, holding approved).

- The workers' compensation claims in question (those filed by Judith Riegert and Ana Fulton–Perez) were within the $1 million deductible. As to these claims, Methodist is "a self-insured entity," and Zurich did not act as Methodist's insurer. Rather, Zurich acted as Methodist's "agent for administering workers' compensation claims."

- Zurich is Methodist's agent both under the parties' contracts and under section 2053.203 of the Texas Insurance Code.

- Under Texas common law, agents owe general negligence duties to their principals.

- The no-duty rule raised by Zurich does not apply in this case because Zurich acted as Methodist's "claims servicing agent" rather than its insurer.

- The Supreme Court of Texas repeatedly has confirmed that Texas law provides a claim for negligent performance of a contract. Therefore, Methodist has a claim for Zurich's negligent performance of its contract.

- Because Zurich was promptly reimbursed from an escrow account funded by Methodist for all payments Zurich made on claims within the deductibles, the payments made on the claims in question were made with Methodist's money, not with Zurich's money. Because Zurich was spending Methodist's money, the no-duty rule advocated by Zurich does not apply.

### Texas Negligence Law Regarding Insurers Handling Third–Party Claims Against Insureds

For decades, Texas courts have recognized a negligence duty owed by an insurer to its insured, that being the duty recognized in *Stowers Furniture Company v. American Indemnity Company*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). In *Ranger County Mutual Insurance Company v. Guin*, the Supreme Court of Texas indicated that insurers owe their insureds a general negligence duty regarding the insurer's handling of third-party claims against the insured. *See* 723 S.W.2d 656, 659–60 (Tex.1987). The Ranger court rejected the insurer's argument that an insured's negligence duty to its insured is limited to the *Stowers* duty. *See id.* In doing so, the *Ranger* court made the following points:

- If, under the insurance policy, the insurer has a duty to defend the insured against third-party claims as well as the right to control the defense of these claims, then the insurer is the agent of the insured.

- In such a case, any negligence on the insurer's part would support a negligence claim by the insured against the insurer.

- The insurer's negligence duty is not limited to the *Stowers* duty; rather, this duty "extends to the full range of the agency relationship."

*See id.* at 659–60. In sum, the *Ranger* court stated that an insurer having a duty to defend and right to control the defense of third-party claims owes its insured a general negligence duty based on the agency relationship the insurer has with its insured.

Though in *Ranger* the Supreme Court of Texas seemed to expand an insurer's negligence duty beyond the *Stowers* duty, the high court later held that this language was dicta and that *Ranger* did not expand the negligence duty owed by insurers be-

yond the duty recognized in *Stowers*. *See American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex.1994). In *Garcia* the Supreme Court of Texas also concluded that an insurer's *Stowers* duty is not activated unless (1) the claim against the insured is within the scope of coverage; (2) a settlement demand is made that is within the policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *See id.*

The Supreme Court of Texas later concluded that, in the context of an insurer that has a duty to defend its insured against third-party claims, "Texas law recognizes only one tort duty in this context, that being the duty stated in *Stowers....* " *Maryland Ins. Co. v. Head Indus. Coatings & Serv., Inc.*, 938 S.W.2d 27, 28 (Tex.1996) (per curiam); *see also Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 318 (Tex.1994) (Cornyn, J., concurring). Based on this line of cases, the United States Court of Appeals for the Fifth Circuit has held that, under Texas law, the only negligence duty owed by insurers in this context is the *Stowers* duty. *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 831–32 (5th Cir.2000). In sum, the Supreme Court of Texas has articulated a rule that, in the context of an insurer with a duty to defend its insured against third-party claims, the insurer owes only one common-law tort duty to its insured, that being the *Stowers* duty. *See Maryland Ins. Co.*, 938 S.W.2d at 28; *Garcia*, 876 S.W.2d at 849

### *Failure of Methodist's Arguments under Binding Precedent*

Methodist is not alleging in this case that Zurich breached the *Stowers* duty. Instead, Methodist alleges Zurich was neg-ligent in handling and paying workers' compensation claims asserted against Methodist. The crux of Methodist's main issue is that Zurich is not acting as an insurer for claims within the $1 million deductible and therefore, the no-duty rule established by the Supreme Court of Texas does not apply. However, under the unambiguous language of the insurance policies and the Deductible Agreement, Zurich is Methodist's insurer and has the duty to promptly pay when due workers' compensation benefits to Methodist's employees. In the policies, the parties describe the workers' compensation benefits as "benefits payable by this insurance." Methodist promises to reimburse Zurich for claims within the $1 million deductible, and the parties established a Methodist-funded escrow account by which Zurich is to be reimbursed weekly for the amounts Methodist owes under this reimbursement obligation. Though none of the past precedents in this area have involved this exact arrangement between the insurer and its insured, Zurich is nonetheless Methodist's insurer, handling and defending third-party claims against Methodist. In addition, Methodist has not cited and research has not revealed authority that would support an exception to the no-duty rule if (1) the insurance policy has a high deductible, (2) the insurer is the insured's claims servicing agent, (3) the insured reimburses the insurer for payments within the deductible, or (4) the insured funds an escrow account that promptly reimburses the insurer for payments made on claims within the deductible. *See Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96–97 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (applying no-duty rule to workers' compensation insurer even though, under a premium payment plan, insured would reimburse insurer for claims

paid under the insurance).[2] Therefore, under binding precedent from the Supreme Court of Texas, Zurich does not owe the negligence duty alleged by Methodist.[3] *See Maryland Ins. Co.*, 938 S.W.2d at 28; *Garcia*, 876 S.W.2d at 849; *see also Ford*, 230 F.3d at 831–32.

Though Methodist does not cite the *Ranger* case in its argument, Methodist's emphasis on a common-law or statutory agency relationship [4] as the source of Zurich's purported negligence duty is reminiscent of the language from *Ranger* that the Supreme Court of Texas later disavowed as dicta. *See Ranger County Mut. Ins. Co.*, 723 S.W.2d at 659–60; *see also Garcia*, 876 S.W.2d at 849.

The insurers in *Maryland Insurance Company* and *Garcia* acted as the insureds' claims-handling agent, yet the Supreme Court of Texas still found the insurers owed no negligence duty other than the *Stowers* duty. *See Maryland Ins. Co.*, 938 S.W.2d at 28; *Garcia*, 876 S.W.2d at 849. As an intermediate court of appeals, we are bound by this no-duty rule, and we must leave any consideration of changing that rule to our high court.[5] *See In re K.M.S.*, 91 S.W.3d 331 (Tex.2002).

2. Zurich relies on the *Wayne Duddlesten* case in its no-duty argument, and Methodist asserts that this case is distinguishable. Nonetheless, the majority attaches undue importance to the issue of whether the *Wayne Duddlesten* case is on point. *See ante* at pp. 517, 522–23 (phrasing issue in terms of whether the *Wayne Duddlesten* case "controls" in this case), pp. 521–22 (concluding that "Texas law negates Methodist's contention that Zurich owed a duty to perform with care," without discussing applicable authority from the Supreme Court of Texas). The facts of the *Wayne Duddlesten* case are not the same as the facts in this case, and even if they were, a decision of a sister court of appeals cannot control the outcome in this case. *See Chrismon v. Brown*, 246 S.W.3d 102, 111 n. 8 (Tex.App.-Houston [14th Dist.] 2007, no pet.). On the other hand, this court must follow a rule established by the Supreme Court of Texas as long as the rule has not been abandoned by that high court or superseded by statute. *See In re K.M.S.*, 91 S.W.3d 331 (Tex.2002).

3. The majority correctly concludes that Methodist and Zurich have an insured/insurer relationship regarding claims within the deductible. However, the only issue the majority discusses in reaching this conclusion is whether section 2053.203 of the Texas Insurance Code applies. *See ante* at pp. 518–20. The relationship between Methodist and Zurich would be an insured/insurer relationship

regardless of whether section 2053.203 of the Texas Insurance Code applies. In addition, Methodist cites common-law agency cases and argues that Zurich owes a negligence duty to Methodist under the common law of agency. By limiting its analysis to section 2053.203 of the Texas Insurance Code, the majority does not address this argument.

4. The majority incorrectly indicates that Methodist argues Zurich is an agent based only on the purported applicability of section 2053.203 of the Texas Insurance Code. *See ante* at pp. 518–20. Instead, Methodist alleges that Zurich is its agent both under this statute and under the common law based on the parties' contract. Even if Zurich were an agent under both the common law and this statute, that would not make the Supreme Court of Texas's no-duty rule inapplicable. This court need not and should not address whether section 2053.203 of the Texas Insurance Code applies to the policies in this case.

5. Methodist's assertion that the negligent performance of any contract gives rise to a negligence claim is not correct. *See Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex.1991); *Janicek v. KIKK, Inc.*, 853 S.W.2d 780, 782 (Tex.App.-Houston [14th Dist.] 1993, writ denied). The no-duty rule outlined above is one of the instances in which the Supreme Court of Texas has not

recognized a negligence claim, even though a party alleges negligent performance of the contract by another contracting party. *See* *Maryland Ins. Co.,* 938 S.W.2d at 28; *Garcia,* 876 S.W.2d at 849.